## Vega, Appellant, v. Burgettstown Borough.

Argued October 1, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

reargument refused February 2, 1959.

*Richard DiSalle,* with him *Adolph L. Zeman, Robert L. Zeman,* and *Zeman & Zeman,* for appellant.

*Edward V. Sciamanna,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 25, 1958:

This is an appeal from the action of the court below granting to appellee, the Borough of Burgettstown, the right to setoff against appellant's salary an amount earned by him in a private capacity during the period of his improper dismissal from his position as appellee's chief of police.

The present controversy arises from appellant's dismissal as chief of police by the Borough Council on February 6, 1954. On appeal, the court below imposed a suspension for a period of sixty days without pay from the date of the purported dismissal, but reinstated appellant as chief of police with a direction to pay him the salary due him from the expiration of the period of suspension on April 16, 1954 to the date of his reinstatement. The Borough appealed to this Court, which, in an opinion filed on November 14, 1955,[1] affirmed the order of the court below. Appellant was reinstated on November 28, 1955. In the present action, appellant sought to recover his salary accumulated during the period of suspension. The appellee contended that the amount of salary should be reduced by whatever sums appellant earned from other sources during this period. Appellee's contention was upheld by the court below, and this appeal followed.

Appellant initially argues that the statute outlining the procedure for the removal of borough policemen is determinative of the present question.[2] Section

---

[1] Reported in 383 Pa. 44, 117 A. 2d 736.

[2] Act of 1951, June 15, P. L. 586, 53 PS §811.

4 of that statute provides: ". . . The appointing au-
thority may suspend any such person without pay pend-
ing the determination of the charges against him, but
in the event the appointing authority fails to uphold
the charges, then the person sought to be suspended
or removed shall be reinstated with *full pay* for the
period during which he was suspended." (Emphasis
supplied.)

Appellant urges that the use of the words "with
full pay" by the legislature demonstrates that it was
not its intention to have earnings from other sources
deducted from the salary of reinstated policemen. This
argument, by no means novel, has been successfully
refuted by the Superior Court in *Seltzer v. Reading*,
151 Pa. Superior Ct. 226, 30 A. 2d 177. In the *Seltzer*
case, in rejecting a similar contention on the part of
an improperly discharged fire alarm operator, the
Court stated: "Plaintiff seeks to avoid the application
of this settled rule by the language of §10 of the above
1933 Act, 53 PS 8480(h) which provides that such em-
ployees 'shall be reinstated *with full pay* for the entire
period during which he may have been prevented from
performing his usual employment . . .' (Italics added)
'The general design and purpose of the law is to be
kept in view' and the statute should be construed with
reference to the object it seeks to attain. [Citing au-
thorities] The Act of 1933 was intended to provide se-
curity to an employee who had achieved civil service
status, in the tenure of his service and to prevent loss
in income when unlawfully discharged. That is all
that is implied in the provision for reinstatement 'with
full pay.' " (p. 228).

Undoubtedly, the legislature intended to do no more
than prevent a monetary loss by the dismissed em-
ployee and to protect him from possible economic ret-
ribution by the discharging authority upon reinstate-

ment. The problem of the treatment of earnings from outside sources is not governed by the quoted phrase.[3] The improperly dismissed employee is protected from financial loss but not to be unjustly enriched.

Neither party to this controversy disputes the test which is to be applied in determining the rights of an improperly suspended or dismissed person in the governmental service to reimbursement of his salary without deductions of earnings from other sources: i.e. is the person a public officer or a public employe? If the former, he is entitled to his salary without deductions; if the latter, he is entitled to his salary subject to a setoff of earnings from other sources.

The distinction is based on the theory that no contractual relationship exists between the governmental unit and a public official, and that the compensation, being incidental to the office which the official holds, is governed by the right to the office, and cannot be diminished by the application of the doctrine of mitigation of damages which is based on the existence of a contractual relationship. See: *Seltzer v. Reading,* supra; *Coble v. Metal Township School District,* 178 Pa. Superior Ct. 301, 116 A. 2d 113; Note, 150 A.L.R. 100.

Both parties have cited instances[4] where this Court was faced with the problem of determining whether

---

[3] A similar conclusion was also reached by the Superior Court in *Coble v. Metal Township School District,* 178 Pa. Superior Ct. 301, 303, 116 A. 2d 113, where the relevant statute provided: "In all cases where the final decision is in favor of the professional employee, the charges made shall be physically expunged from the records of the board of school directors (or the board of public education), *and in all such cases, there shall be no abatement of salary or compensation . . ."* (Italics supplied).

[4] Neither a policeman nor a chief of police is within the meaning of Article VI, section 4 of the Pennsylvania Constitution providing appointed officers: "may be removed at the pleasure of the power by which they shall have been appointed:" *Commonwealth*

or not a policeman, or a chief of police, was to be considered as a public officer or an employee. However, the precise question herein presented has never been specifically raised in this Court, and we do not believe that these decisions are apposite to the instant situation.[5] In the final analysis, we are of the opinion that the court below most aptly set forth the factors which are determinative of the instant question when it stated: "Where the duties of the office are to be exercised for the benefit of the public, for a stipulated compensation to be paid by the public, where the term is definite and the tenure certain, and where the powers, duties and emoluments become vested in a successor when the office becomes vacant, the occupant of such office is a public officer. On the other hand, it is recognized that some officers, although they have some public duties to perform, are not to be considered public officers, when their work in the main, is of a ministerial nature . . .

---

v. Black, 201 Pa. 433, 50 A. 1008; Zeloyle v. Bettor, 371 Pa. 546, 91 A. 2d 901; nor are they to be considered as public officers within the meaning of Article III, section 13, which provides: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Zeloyle v. Bettor, supra. It might be noted that in Commonwealth v. Black, supra, the Court stated with regard to the status of a policeman that: "Without going into the discussion at length, we are of opinion that a policeman is a subordinate ministerial agent or employee, like a fireman, a watchman, or superintendent of public squares or other property, under the order of a municipal department. He is not an independent 'municipal officer exercising grave public functions' . . ."

[5] Appellant does raise the point, however, that in Schearer v. City of Reading, 346 Pa. 27, 28 A. 2d 790, a chief of police was reinstated with full pay. However, the Schearer case was concerned only with a determination of whether or not the plaintiff had been improperly discharged and the issue of reducing his salary by earnings from other sources was not raised, nor was there any evidence that such earnings existed.

"While it is true that a chief of police may be referred to in some Acts of Assembly as an 'officer', yet in the opinion of this Court, he is not a public officer within the meaning of the laws of Pennsylvania. He exercises no public functions, his duties are purely ministerial, whether those duties are fixed by law or determined by his immediate superior, who, in this case, involving a Borough, would be the Burgess . . . And while he may have been designated as chief of police, yet he is still a policeman within the contemplation of the Act of June 15, 1951, P. L. 586, under which his right of tenure and his claim of back pay is based."

The analysis by the Court below is in line with the test for the determination of a public officer recently approved by this Court in *Commonwealth ex rel. Foreman v. Hampson*, 393 Pa. 467, 473, 474, 143 A. 2d 369: "The test to be applied in determining a public officer was summarized in Alworth v. County of Lackawanna, 85 Pa. Superior Ct. 349, 352, as follows: 'If the officer is chosen by the electorate, or appointed, for a definite and certain tenure in the manner provided by law to an office whose duties are of a grave and important character, involving some of the functions of government, and are to be exercised for the benefit of the public for a fixed compensation paid out of the public treasury, it is safe to say that the incumbent is a public officer within the meaning of the constitutional provisions in question. This we think is the effect of the adjudications on the subject. While this rule requires consideration of various matters in determining whether an office can properly be considered to be within the meaning of the clause of the Constitution under consideration, the character of the functions to be performed is of prime importance.' "

Appellant's acceptance of an initial appointment as a policeman, and a subsequent appointment as chief of police resulted for present purposes in a contract of employment and any sums earned by him during the period of unlawful dismissal were properly deducted from the salary due him as chief of police. The chief of police is a public employee, not a public officer in this respect.

Appellant's final argument is that his right to recovery is based on the order of the court below reinstating him as chief of police which should be treated as a final judgment against the appellee-borough from the date of its entry. This contention is untenable. The order did no more than hold that the appellant was improperly dismissed and directed his reinstatement with pay. The question of a setoff was not raised nor did the court purport to investigate the relationship between appellant and appellee to determine if a setoff was required. To hold that under these circumstances the appellee was required to comply with the order on the date of its entry would be to foreclose the appellee from raising and arguing an issue which at that time was not even material to the case.

Under the circumstances herein presented the court below very properly permitted appellee to setoff by way of deductions appellant's earnings from private sources during the period of his improper dismissal from appellee's service.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On February 15, 1954, the Council of the Borough of Burgettstown, Washington County, dismissed Henry Vega as chief of police, a post he had held for four years. He appealed the dismissal to the Court of Com-

mon Pleas which reversed the action of the Council by ordering a suspension of 60 days and requiring the Borough to reinstate Vega as of April 16, 1954. Under this order Vega tendered himself for reinstatement, but the Council refused to accept him, appealing to this Court for a reversal of the decision of the Court of Common Pleas. This Court affirmed the decision of the lower Court, adding that it was warranted in finding that Vega "possessed the qualifications and the ability to make a good police officer." (383 Pa. 44, 50). Finally on November 28, 1955, Burgettstown reinstated Vega with all authority, powers, and duties of the chief of police of that municipality.

Since this Court by its decision declared that the Borough had not been justified in dismissing Vega, Vega properly made a claim for the salary which was withheld from him during the entire time that he was qualified, ready and willing to take up his duties, namely, from April 16, 1954 to November 28, 1955. As his salary was $300 a month, the total amount due him under this computation was $5850. Buttressing his claim for the amount in question, Vega cited Section 4 of the Act of 1951, June 15, P. L. 586 (53 P.S. 814) which says: "The appointing authority may suspend any such person without pay pending the determination of the charges against him, but in the event the appointing authority fails to uphold the charges, then the person sought to be suspended or removed shall be reinstated *with full pay* for the period during which he was suspended . . ." (Emphasis supplied).

The Borough resisted payment of the $5850 because Vega, while awaiting determination of the courts as to his rights, obtained employment with the Weirton Ice & Coal Supply Company in Weirton, W. Va., earning, during the period he was barred from his police chiefship, the sum of $5608.56. The Borough offered

to pay Vega the difference between $5850 and $5608.56. Vega refused to settle on this basis and a lawsuit followed. The Court of Common Pleas of Washington County decided in favor of the Borough, and the plaintiff appealed.

This Court now affirms the judgment of the lower Court and, by doing so, amends an Act of the Legislature without the slightest authority to do so. It makes "full pay" read "part pay." It does more. It penalizes the innocent party in a lawsuit and rewards the guilty party. The highest Court of this Commonwealth has declared that the Borough of Burgettstown illegally and unjustly dismissed Vega and yet this same Court now says that the guilty Borough is entitled to the $5608.56 which was paid by the Weirton Ice & Coal Supply Company to Vega for services rendered by him to that corporation. This Court thus introduces Burgettstown into a transaction in which it had no business whatsoever.

While law does not necessarily (unfortunately) have to coincide with the recognized virtues of good living, courts and judges should still avoid making decisions which are shocking to conscience and which are derogatory of public welfare. There is something quite startling (insofar as public welfare is concerned) about a Court decision which places a premium on sloth and a penalty on industry. If Vega had sat in his parlor for nineteen months doing nothing but watching television, eating sandwiches, and drinking beer, the Borough would have had to pay him $5,850, but, because he exerted himself, as a good citizen and a responsible member of society should, by working, while the Borough was denying him what he was entitled to, he must give up $5,608.56 which he earned by his own sweat and toil. Such a situation does not strike a very melodious chord on the piano of justice which I always

try to keep tuned in the living room of my mind and heart.

The Majority Opinion says: "The improperly dismissed employee is protected from financial loss but [is] not to be unjustly enriched." But since the Majority's statement specifically declares that the employee was "improperly dismissed" how can there be an unjust enrichment? Even if the municipality paid Vega the entire amount of $5850 due him during the period of improper dismissal, he would still be out of pocket because of the not inconsiderable expense to which he was subjected in litigating his claim now proved to be in accordance with law.

The Majority cites the case of *Seltzer v. Reading*, 151 Pa. Superior Ct. 226, where "full pay" was also interpreted to mean "part pay." But if it is wrong today to distort the plain wording of a statute, the distortion is not straightened by showing that on a prior occasion the same deforming manipulation took place. If the Legislature intended that where an improper dismissal occurs the employee should only be paid the difference between what he has earned and what he should have been paid during the dismissal interval, it would have been a very simple matter to have so stated. I believe that it is gratuitous on the part of this Court to read into statutes what is precisely not there and what was undoubtedly purposely omitted.

It may well be that the Legislature intended to penalize municipalities for improper dismissals by requiring them to pay the innocent and injured employee his full pay for the period he was under unjust accusation. It may also be that the Legislature intended by the provision in question to compel the municipality to proceed expeditiously in resolving any dispute between it and the employee. Under the Majority's ruling the municipality has nothing to lose by an undue

prolongation of the controversy (once it knows the employee is employed elsewhere) even though the delay may be subjecting the employee to considerable hardship. In the very case at bar it will be noted that Vega had to leave Burgettstown and work in a town far removed from his home in order to get bread to put on the table for himself and family, while the question of his illegal dismissal was being adjudicated.

The Majority sees much merit in a distinction attempted to be drawn by the lower Court as follows: "Where the duties of the office are to be exercised for the benefit of the public, for a stipulated compensation to be paid by the public, where the term is definite and the tenure certain, and where the powers, duties and emoluments become vested in a successor when the office becomes vacant, the occupant of such office is a public officer. On the other hand, it is recognized that some officers, although they have some public duties to perform, are not to be considered public officers, when their work in the main is of a ministerial nature . . ."

I fail to see the distinction. The Court says that a chief of police "exercises no public functions, his duties are purely ministerial." I should think that the functions of a chief of police are quite public and that his duties involve a great deal of discretion. He does not arrest blindly or by chance, he does not establish fire lines and police lines by rote, he does not quell riots and disturbances by mechanical routine.

The Majority quotes from the case of *Alworth v. County of Lackawanna,* 85 Pa. Superior Ct. 349, 352, which says: "If the officer is chosen by the electorate, or appointed, for a definite and certain tenure in the manner provided by law to an office whose duties are of a grave and important character, involving some of the functions of government, and are to be exercised

for the benefit of the public for a fixed compensation paid out of the public treasury, it is safe to say that the incumbent is a public officer." All these provisions would still apply to a chief of police because he is certainly appointed for a definite and certain tenure and his duties are indeed of a just and important character and they are certainly exercised for the benefit of the public for a fixed compensation paid out of the public treasury.

With all respect, I must say that in a case of this kind, the distinction being attempted by the lower Court, and affirmed by this Court, between a public officer and a public employee is illusory and deceptive. Under the rule here announced by this Court a director of public safety would indubitably be regarded as a public officer and if dismissed improperly would, upon reinstatement, be entitled to the full salary of his office even though in the meantime he had been employed by a private corporation at a higher salary than his director's salary, while a chief of police, for doing the same thing, would lose his salary completely or have it considerably reduced. This is a distinction which does not appeal to my sense of justice and it is a distinction which, as I read the statute, the Legislature never intended to make.

When the Constitution is amended to provide that the Supreme Court shall sit as a super legislative reference bureau to rewrite statutes to conform to its idea of what the law should be, a decision such as the one now being promulgated will be entirely in order. However, until that time arrives, I must assert that we have no right to declare that when the Legislature says "full pay" it must have been unfamiliar with the rudiments of the English language, and meant to say "part pay," or "full pay less all the money he has earned elsewhere."

I accordingly dissent.

Mr. Justice BELL joins in this dissent.