FRANCISCO TORRES CARTAGENA, Plaintiff and Appellant, *v.* CÁNDIDO OLIVERAS, ETC., ET AL., Defendants and Appellees.

No. R-65-248.     Decided June 9, 1967.

*Miguel A. Giménez Muñoz* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Adaljisa Díaz de Collazo, Assistant Solicitor General,* for appellees.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Plaintiff, a public school teacher, was separated from his position by preferment of charges. After a hearing he was exonerated. The Secretary of Education decreed his reinstatement with back pay of his salary corresponding to the suspension period. But when he claimed the salaries, they were not paid to him. He filed a mandamus requesting payment. As defense it was alleged "that defendant is not entitled to receive the salaries he failed to receive during the time he was suspended, because during said period he received earnings which are deductible from the salaries which should be paid to him." And it was stipulated that the earnings received exceeded the salaries which he failed to receive.

The trial judge decided that "defendant's right to recover salaries which he failed to receive while he was suspended from employment and salary is contingent upon whether the position he occupied in the government was that of a public officer . . . or that of a public employee . . .", that "if he is a public officer he is entitled to the payment of salaries which he failed to receive during the period of his suspension, since the payment of salary is inherent to the public function discharged. If he is a public employee the relation between him and the government is of a contractual nature, and he would not be entitled to the payment of salary." He concludes, then, "that a school teacher is a public employee" and that therefore, "the measure of the damages

is determined by the wages which were to be paid, less any sum actually earned by plaintiff during the period of his suspension which might have been earned by him by the exercise of reasonable diligence in the seeking of other similar employment. 47 Am. Jur. § 145, p. 402." As plaintiff had earnings which exceeded the salaries claimed he dismissed the complaint. We agreed to review the judgment.

The conclusion of law, on which the judgment appealed from is based, is favorably received in the American jurisprudence. To us, however, it seems arbitrary, and without a basis in reason and equity. See Annotation 150 A.L.R. 100 (1944). In some state jurisdictions, although they make the same distinction, they apply it in a different manner. Following the common law they maintain, irrespective of the question of mitigation of damages, that an employee may recover the back pay not received during the period of his dismissal, while the officer is denied it. *Mastrobattista* v. *Essex County Park Com.*, 215 A.2d 345 (N.J. 1965). The Supreme Court of New Jersey considers this question extensively in the case cited above:

"The common law cases were discussed in *De Marco* (21 N.J. 136, 121 A.2d 396) and need not be detailed here. They drew distinctions between offices, positions and employments which were described in Miele as 'somewhat obscure and rather unfortunate' (31 N.J., at p. 347, 157 A.2d 306) and by Glasser as 'seriously lacking in realistic usefulness.' 6 Rutgers L. Rev. at p. 503. They led to disparate treatment among comparables, now difficult to justify.

"·      ·      ·      ·      ·      ·      ·      ·

"Current concepts of fair play in employment relationships suggest that persons in the public service who have been suspended or removed on charges later determined to be unfounded should be made whole insofar as possible; they should be entitled not only to restoration of duties but should also suffer no loss in their earnings. This is the course taken by many statutes and decisions in the federal sphere and in our

sister states (see *Vitarelli* v. *United States,* 279 F.2d 878, 150 Ct. Cl. 59 (Ct. Cl. 1960); *Mass* v. *Board of Education,* 61 Cal.2d 612, 39 Cal. Rptr. 739, 394 P.2d 579 (1964); *McKenna* v. *Commissioner of Mental Health,* 347 Mass. 674, 199 N.E.2d 686 (1964); *People ex rel. Bourne* v. *Johnson,* 48 Ill. App.2d 307, 199 N.E.2d 68 (1964), aff'd 32 Ill.2d 324, 205 N.E.2d 470 (1965); see also the references in *McGrath* v. *Jersey City, supra,* 38 N.J., at p. 32, 183 A.2d 7); although these out-of-state pronouncements may leave room for some divergence of opinion as to the applicable extent of the doctrine of mitigation (*Lower Merion Township* v. *Turkelson,* 403 Pa. 72, 169 A.2d 97 (1961), they afford no basis for the denial of back pay on any technical distinctions between offices, positions and employments."

It being established that there is no reasonable basis for the distinction between officers and employees on which the judgment appealed from is based, it is proper to consider now the merit of the defense filed by the state with a view to our law and the case law construing it.

Section 5 of Act No. 312 of 1938—18 L.P.R.A. § 217—which was in force on the date the charges were preferred against appellant provided that "Permanent teachers may be suspended or removed from office only for just cause, according to the provisions of, and the procedure prescribed by, the Compiled School Law and the regulations of the Department of Education; Provided, however, That in cases of immoral conduct or physical or mental disability, said teachers shall be suspended summarily, until the hearing of the case." And § 42 of the Compiled School Law approved March 12, 1903—18 L.P.R.A. § 245—established in its pertinent part that "Teachers shall be suspended from their positions by the Secretary of Education or by the school director for cruelty, immorality, incompetency, insubordination or negligence in the performance of their duties, and said Secretary may reinstate them or dismiss them and cancel their licenses after an investigation which shall be

held and in which the school director may file a statement and said teachers shall be heard in their own defense either verbally or in writing; . . . ."

In *González* v. *Gallardo, Commissioner*, 62 P.R.R. 263 (1943) we stated in relation to the Teachers' Tenure Act, § 5 of which we copied above, and which was in force on the date the charges were preferred against appellant, that:

"Act No. 312 [of 1938, 18 L.P.R.A. § 214 *et seq.*] is not indigenous to Puerto Rico. It follows a pattern which has gradually spread throughout the United States. 'The Teacher Tenure Act was designed to accomplish a laudable purpose. If sanely and impartially administered, the beneficent results to inevitably follow will vindicate the persistent efforts of its champions in procuring its adoption. It was intended, *inter alia,* to protect the worthy instructors of the youth of a parish from enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs.' (*Andrews* v. *Union Parish School Board,* 184 So. 574, 578 (La. 1938).) It has been repeatedly held that Teachers' Tenure Acts were approved, among other things, to protect teachers, and hence that such an Act 'must always be liberally construed in favor of those it is enacted to protect.' (*Kennington et al.* v. *Red River School Board,* 200 So. 514, 16 (La., 1940).''

Aware of said purpose the same day we decided the *González* case, we sanctioned, in *Rosario* v. *Gallardo, Commissioner*, 62 P.R.R. 255 (1943) the rule of paying the salaries not received during the period of suspension to the teacher against whom charges were preferred and who was later exonerated, notwithstanding the law contained no provision as to this particular. We stated that "To hold otherwise would theoretically enable a Commissioner to harass a permanent teacher by an interminable series of charges, suspensions and hearings, on which no definite con-

clusions of innocence or guilt would be announced, but on each occasion cutting off his salary during the suspension period."

This same reasoning is applicable to the defense filed in the present case. The right to receive full pay is the guarantee the teacher has to prevent the arbitrary preferment of charges. The mere preferment affects the reputation of a person. The lawmaker intended to protect the teacher from said possibility. On the other hand, the teacher needs earnings to pay for his living expenses. It should not be expected that he wait arm-folded for the final result of the charges preferred against him. Certainly the guarantee entailed by the payment of the full salary would be destroyed, if we should establish the rule for deducting the earnings received by the teacher during his wrongful discharge.

Being acquainted with our jurisdictional rule established in the *Rosario* case, the Legislative Assembly, in reenacting a new law in the year 1965—Act No. 115 of June 30, 1965 —provided that "If the order of cancellation or suspension of the certificate or of severance of the teacher were revoked by the Board, the Superior Court of Puerto Rico, or any other court of appeals, the suspended teacher shall be entitled to recover the salaries he may have failed to receive during the suspension period." As it will be noted it did not provide that the earnings received by the teacher during the suspension period would be deducted from the salary. But being always conscious of the guarantee of the teacher's tenure, it provided that "If the proceeding established by this act lasts more than ninety (90) days after the date of the cancellation, suspension or severance order, the teacher shall, at the expiration of such period of time, be entitled to continue drawing his salary until the Board shall have made its decision, unless the delay has been due to suspensions at the request of the teacher, or to other causes attributable to him, as determined by the Board . . . ." See *State* v.

*Tangipahoa Parish School Board*, 6 So.2d 696 (La. 1942) and Annotations, 145 A.L.R. 408, 432 (1943), 150 A.L.R. 100 (1944) especially in reference to teacher cases at p. 113.

In the State of California where the law, 33A West's Annotated California Code, § 19584 and the case law, *Mass* v. *Board of Ed. of San Francisco Unified Sch. Dist.*, 394 P.2d 579 (1964) sanction the rule of deducting the earnings received from other activities from the salary not received, there prevails the rule that "Not all earnings would be deductible; for example, earnings from night or weekend work, which would not have been inconsistent with school employment, are not to be deducted. (*Beseman* v. *Remy* (1958) 160 Cal. App.2d 437, 445, 325 P.2d 578.) Hence the burden should rest upon the board to prove which particular earnings, if any, qualify for mitigation." *Mass*, n. 12 at p. 590. See also, *People* v. *Johnson*, 205 N.E.2d 470, 473 (Ill. 1965). And in the federal case law the deduction from the earnings obtained during the suspension period is established by law. 5 U.S.C. § 652(b).

Our Personnel Act, § 31—3 L.P.R.A. § 671—provides that "The Board shall authorize the total or partial pay which would have appertained to the reinstated official or employee from the date on which he was removed by the appointing authority; or that the said period be considered as a suspension from office without pay; or it may recommend any other reasonable penalty under the provisions of this Act." In construing this provision we stated in *Soto* v. *Personnel Board*, 85 P.R.R. 784 (1962) that:

"An examination of the aforecited provision shows that in removal cases the Personnel Board can adopt any of the following actions: (1) affirm the removal; (2) order the reinstatement; (3) reverse the removal but providing a suspension from office without pay because the fault committed does not merit the strictness of a removal; (4) impose any other proper penalty. This explains why the law empowers the Board to authorize the total pay of the salaries which the employee had

accrued—when it reverses the removal—or the partial pay—when it has imposed a suspension from office without pay for a period less than the lay off. The statute does not authorize a partial deprivation of salaries when the reinstatement of the employee is ordered. Precisely the purpose of ordering the payment of the salaries is to reinstate to the employee the benefits which he did not receive because of the unjustified action of the appointing authority."

Although in footnote 2 we stated: "Since it does not appear from the record that appellant received income for other concepts during the period of his lay off, it is not necessary to discuss now the power of the Personnel Board to reduce for this reason the salaries which were not received. See, Annotation, 150 A.L.R. 100 (1944)."

It seems to us that the rule which is to be definitely adopted for the nonteacher employees, and who are under the Personnel Act, should be considered by the Legislative Assembly. It is actually incumbent on said body to make the final determination on this matter, after listening to the scholars of the problem and considering all the factors involved. It is a rule of public policy which should be established by law.

For the reasons stated the judgment will be reversed and the complaint sustained.