**Recount of Election of Judge**

KANE, Attorney General, March 10, 1975.—You have requested our opinion as to whether a common pleas court judge whose election was certified only after protracted recount proceedings is entitled to compensation as of the beginning of the term for which he was elected, or as of the date he was sworn into office and commenced performing his judicial duties. It is our opinion, and you are hereby advised, that a judge's salary is an incident of his office, the title to which office vests at the moment the election is closed. Accordingly, he is entitled to his salary from the outset of the term, notwithstanding the delay in his assuming office occasioned by the proceedings to recount the ballots cast in the election.

In the municipal election of November 6, 1973, there were three candidates for judge of the Court of Common Pleas of the Thirty-sixth Judicial District (Beaver County) and two vacancies in that office to be filled. The candidates were Robert C. Reed, Joseph S. Walko and H. Beryl Klein. Election recount petitions were filed by Robert C. Reed and Joseph S. Walko. Both candidates involved in the recount stipulated that H. Beryl Klein should assume office, since he received a clear majority of votes. After the recount of ballots on December 28, 1973, Robert C. Reed emerged the winner in the recount. After proceedings on challenged ballots in the court below, Robert C. Reed again was the winner. The case was appealed to the Pennsylvania Supreme Court and by opinion

dated July 1, 1974, the Supreme Court remanded the case to Beaver County for the counting of the paper ballots with corners on. On September 23, 1974, the ballots with corners on were counted and, once more, Robert C. Reed was the winner. Reed's commission was recorded on October 21, 1974, and was dated as of January 1, 1974. Robert C. Reed took the oath of office on October 21, 1974, and has performed the duties of his office since that date.

Article V, sec. 15(a), of the Pennsylvania Constitution specifies that "[t]he regular term of office of justices and judges shall be ten years," while article V, sec. 16(a), provides:

"Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

The salary of common pleas court judges was set statutorily, Act of June 1, 1956, P. L. (1055) 1959, 17 PS §830.26, as amended, and more recently by the First and Second Reports of the Commonwealth Compensation Commission, authorized under the Act of June 16, 1971 (No. 8), 46 PS §6 (repealed).

The relevant constitutional and statutory provisions are clear that the terms of office of common pleas court judges shall commence the first Monday of January next succeeding their election, and they shall be commissioned accordingly: Act of April 30, 1874, P. L. 118, 17 PS §§9, 793. Pursuant to 17 PS §8, the Governor is directed to grant those persons elected their respective commissions "[a]s soon as practicable." This language apparently recognizes the possibility of recount proceedings or an election contest, and, therefore, Judge Reed's commission was

issued as of January 1, 1974. See Goodwin v. Allegheny County, 182 Pa. Superior Ct. 28, 125 A. 2d 640 (1956).

Pennsylvania case law clearly supports Judge Reed's claim to compensation payable from the date of his commission. Most directly on point is Rink v. The City of Philadelphia, 15 W.N.C. 345 (1884), affirmed 17 W.N.C. 136 (Pa. Supreme Ct., 1886). The case involved a magistrate's election in 1880, the result of which indicated that Rink lost to his opponent, Barr. Barr was given a certificate of election and was duly commissioned in that year for a five-year term. Rink filed a petition contesting the election, and after three years of litigation, Rink was declared to be the winner. Rink then filed suit against the city to recover his salary, practically all of which had been paid to Barr. The lower court granted relief, saying, at pages 346-47:

"[Rink] was the de jure officer, whose title dated back to the time when he and not Barr was elected.

"It is well settled in Pennsylvania that none but a de jure officer can claim compensation for official services.

"Some one had a constitutional right to this salary . . . and when the question is asked, to whom does this salary belong, the answer must be, to the person who was elected a magistrate at the proper election, whose *title* was then perfect, although subsequently maintained and declared perfect, and who has done all in his power to assert and sustain rights which became vested the moment the election closed.

"The salary is annexed to the office of a magistrate, and to the person who holds the *title* . . . and not to a . . . *de facto* officer.

"When the Governor very properly commissioned . . . Rink 'to have and to hold this commission, and the office hereby granted unto you for the term of five years from the first Monday of April, 1880 [the

beginning date of the term of office],' he conferred by a constitutional right a title which carried with it 'the emoluments to a magistrate lawfully belonging, or in any wise appertaining by virtue of the Constitution and laws of this Commonwealth.'

". . . To say an elected officer, you have a constitutional title to an office, . . . and yet you shall be deprived of that to which the law gives you a vested right, is to assert a principle which we think even the legislative department of the government could not do . . . so long as it protects the right of a citizen to his own property." (Emphasis in original).

The Rink decision has been cited with approval in subsequent cases, to support recovery by a *de jure* school tax collector against both his de facto counterpart (Jones v. Dusman, 246 Pa. 513, 92 Atl. 707 (1914)), and against the school district itself: Tarner v. Chambersburg Boro. Sch. Dist., 338 Pa. 417, 12 A. 2d 106 (1940); Marshall v. Uniontown Boro. Sch. Dist., 262 Pa. 224, 10 5 Atl. 78 (1918).

Although the instant case does not involve de jure versus de facto rights to office, the de jure cases are relevant because they highlight the fact that the emoluments of an elective office are an integral part of the office itself, and belong to the person whose rightful office it should have been as of the date of the election or the date when the commission for that office issues. The compensation is not for services performed, but rather an incident of the office itself. In all of the above cases, the governmental unit has been required to pay the de jure officer as of the date he would have taken office by reason of his election. The prevention of the performance of his duties because of post-election disputes has been held to have no effect upon the payment of the compensation mandated by the elective position.

Rumberger v. Horvath, 52 D. & C. 2d 177 (C.P. Northumberland County, 1970), is the most recent case to address directly the issue here involved. The factual circumstances in the case, as far as relevant, related to a county official who was adjudged re-elected as a county commissioner after the resolution of an election dispute with his opponent. Because the official was involved in an election dispute, the former board of county commissioners was held over. Prior to the commencement of the new term and the subsequent certification of the contestant's re-election, an act increasing the salary incident to the position took effect. After his certification, the official claimed the increase in the compensation from the effective date of the act, that is, he claimed the difference between what he should have been paid under the new act and what he was paid as a result of his holdover status. Relying largely on Rink, supra, the court agreed with the official and awarded him the difference in compensation.

In addition to the above case law, prior administrative precedent exists for paying Judge Reed. In Informal Opinion No. 519 of the Attorney General dated January 10, 1935, the Department of Justice advised the Auditor General that under the Rink, Marshall and Jones decisions, supra, the ultimate winner of a contested judicial election held in 1933 was entitled to be paid by the Commonwealth an amount equal to the salary paid to his commissioned opponent, the ultimate loser of the election contest. Similarly, in a memorandum dated December 18, 1967, the Chief Counsel to the Auditor General authorized payment to the winner of a contested judicial election of his salary from the outset of his term to the date when he finally assumed office after the contested election twice had reached the Supreme Court. See Cullen

Appeal, 392 Pa. 602, 141 A. 2d 389 (1958), and 394 Pa. 256, 146 A. 2d 831 (1958).

The question remains whether there should be a set-off against any income earned by Judge Reed between January 1 and October 21, 1974. In Vega v. Burgettstown Borough, 394 Pa. 406, 147 A. 2d 620 (1958), the Supreme Court considered the question of whether a police officer improperly suspended from his office was entitled to full back pay or whether a set-off was required in the amount of the income earned from other sources during the period of his suspension. In answering this question, the court distinguished between a public *officer* and a public *employe*, stating:

"The distinction is based on the theory that no contractual relationship exists between the governmental unit and a public official, and that the compensation, being incidental to the office which the official holds, is governed by the right to the office, and cannot be diminished by the application of the doctrine of mitigation of damages which is based on the existence of a contractual relationship. See: Seltzer v. Reading, [151 Pa. Superior Ct. 226, 30 A. 2d 177 (1943)]; Coble v. Metal Township School District, 178 Pa. Superior Ct. 301, 116 A.2d 113; Note, 150 A.L.R. 100": 394 Pa. at 410, 147 A.2d at 622.

See also, Smethport School District v. Bowers, 440 Pa. 310, 269 A. 2d 712 (1970); Snyderwine v. Craley, 434 Pa. 349, 254 A. 2d 16 (1969); Naef v. Allentown, 424 Pa. 597, 227 A. 2d 888 (1967).

The court determined in Vega that the police officer in question was a public employe rather than a public officer and, therefore, that there must be a set-off for the income he earned during his suspension. However, in doing so, the court made clear that where the individual in question is a public officer, he is entitled

to his salary without such a deduction. Since judges are considered to be public officers under article VI of the Pennsylvania Constitution,[1] no set-off of any income earned during the recount should be made against the amount due to Judge Reed.[2]

Based on the foregoing, it is our opinion, and you are hereby advised, that Judge Reed is entitled to the full amount of the salary payable to him from January 1 to October 21, 1974, without any set-off. Pursuant to section 512 of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, as amended, 71 PS §192, we

---

[1] A judge is clearly a public officer under the test approved by the Supreme Court in Commonwealth ex rel. Foreman v. Hampson, 393 Pa. 467, 473-74, 143 A. 2d 369, 372 (1958), and followed in Vega supra:

" 'The test to be applied in determining a public officer was summarized in Alworth v. County of Lackawanna, 85 Pa. Superior Ct. 349, 352, as follows: "If the officer is chosen by the electorate, or appointed, for a definite and certain tenure in the manner provided by law to an office whose duties are of a grave and important character, involving some of the functions of government, and are to be exercised for the benefit of the public for a fixed compensation paid out of the public treasury, it is safe to say that the incumbent is a public officer within the meaning of the constitutional provisional provisions in question" ' ": 394 Pa. at 412, 147 A. 2d at 623.

[2] 17 PS §§1607 and 1607.1, which prohibit a judge of a court of record from practicing as an attorney or performing the duties of an arbitrator, are inapplicable here as a basis for a set-off. Although Judge Reed's commission is retroactive to the beginning of his term, the purpose of these provisions is to preclude a sitting judge from engaging in activities which constitute a potential or actual conflict of interest, whereby a matter in which he so participates may later come before him, or be subject to influence exercised by virtue of his judicial office. Since Judge Reed did not assume the duties of his office until October 21, 1974, no occasion for such a conflict could arise, and he was not a "judge" as the term is used in these provisions.

have afforded the Department of the Auditor General the opportunity to present any views which it may have upon this question, and we are advised that it is in accord with the conclusions expressed in this opinion.