## Cabinet Salaries

GORNISH, *Attorney General,* LILIEN, *Deputy Attorney General,* December 29, 1978—You have requested our opinion as to whether cabinet officers may receive salary increases during their terms of office. It is our opinion and you are so advised that those cabinet officers[1] named in the Administrative Code who require Senate confirmation are public officers for purposes of Article III, §27 of the Pennsylvania Constitution, and as such are prohibited from receiving salary increases while in office.[2]

Article III, §27 of the Pennsylvania Constitution (formerly Article III, §13) provides: "No law shall extend the term of any public officer, or increase or

---

1. The term "cabinet officers" is an informal term to designate those individuals whom the Governor includes in his "cabinet." There is, however, no legal designation of any particular position in the cabinet and the Governor may create such positions as he chooses to be in his cabinet. Accordingly, while it may be a misnomer to refer to "cabinet officers" in this opinion, we limit the term to those named in section 207.1(d)(1) of the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §67.1(d)(1), who head departments under the Governor's jurisdiction and are subject to confirmation.

2. Just as Article III, §27, prohibits increasing the salary of "public officers" while in office, it likewise prohibits decreasing the same public officers' salaries while in office. Thus, the legislature, if displeased with the action of a particular cabinet officer, could not show such displeasure by reducing the public officer's salary to one dollar per annum.

diminish his salary or emoluments, after his election or appointment."

It has always been assumed that such increases are impermissible and this was the view taken in recent years by the Shapp administration, although no formal opinion ever addressed the issue of cabinet officers.[3] Recently, however, this position has been questioned for the reason, as expressed in your letter of request, that cabinet officers do not meet the "fixed term" component of the prerequisites of a "public officer." It is our opinion, and you are advised, that cabinet officers are indeed public officers under Article III, §27, and that they do meet whatever "fixed term" standard that definition requires.

Furthermore, it should be noted not only that the Constitution dictates the conclusion that cabinet officers may not receive increases of compensation while in office, but a plain reading of the statute creating the Commonwealth Compensation Commission also leads to the same conclusion. The law provides that any report of the commission is effective on the "date of assumption of office of persons affected thereby . . ." Act of June 29, 1976, P.L. 452, sec. 8, 65 P.S. §364. Thus, by the very terms of the statute, any report issued will be effective only as to those who assume office after the date of the report. Therefore, as a practical matter, those office-holders who are in office at the time of the report and continue in office have not assumed their duties after the date of the report and as such would not be affected by the report.

---

3. See Attorney General opinion 245 of 1961 covering members of various boards and commissions. See also, Attorney General opinion no. 30 of 1974 which assumes the applicability of Article III, §27 to cabinet officers.

One of the leading cases construing Article III, §27, is Richie v. Philadelphia, 225 Pa. 511, 74 Atl. 430 (1909). The court there held at page 513 as follows:

". . . What we are again called upon to decide is whether the thirteenth section of the third article of the constitution is broad enough, and was so intended by the framers of the constitution, to extend to all public officers (except those saved by the constitution itself) upon whom grave and important duties are imposed for a *fixed* term. . . ." and further held at page 516:

". . . Where, however, the officer exercises important public duties and has delegated to him some of the functions of government *and his office is for a fixed term* and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer. . . . Their duties are designated by statute; *they serve for a fixed period;* act under oath, the duties they perform are semi-judicial in character and their services are indispensable in the fiscal system as established by the state. . . ." (Emphasis supplied.)

In determining what office or officer comes within the proscriptive language of the Constitution, the court, in delineating the elements to be considered, used the conjunctive word "and" in stating that the office is for a fixed term or period. Thus, for an individual to be a public officer, he must both exercise important duties as well as have a "fixed term."

In Com. ex rel. v. Moffitt, 238 Pa. 255, 86 Atl. 75 (1913), the Supreme Court of Pennsylvania quoted the court at page 257: ". . . Wherever an officer

exercises important duties and has delegated to him some of the functions of government, and his office is for a fixed term. . ."

Other cases such as Com. ex rel. v. Moore, 71 Pa. Superior Ct. 365 (1919), affirmed 266 Pa. 100, 109 Atl. 611 (1920); Tucker's Appeal, 271 Pa. 462, 114 Atl. 626 (1921); In re: Appeal of Harry W. Bowman, 111 Pa. Superior Ct. 383, 170 Atl. 717 (1934); and Vega v. Burgettstown Borough, 394 Pa. 406, 147 A. 2d 620 (1958), similarly defined a "public officer" as one discharging important public responsibilities for a fixed term of office. Other cases have focused more specifically on the fixed term requirement. In Com. ex rel. Foreman v. Hampson, 393 Pa. 467, 143 A. 2d 369 (1958), and Wiest v. Northumberland Co., 115 Pa. Superior Ct. 577, 176 Atl. 74 (1935), the court refused to find that a county solicitor and a solicitor to a county controller were public officers on the ground that solicitors are not appointed for a fixed term but occupy their positions at the will of the commission or controller who appoints them.

Thus, the cases uniformly reflect the definition of a public officer as one with a fixed term of office and one who exercises important public functions. The latter requirement is clearly met by cabinet officers. They are the highest ranking officials in executive departments and have broad policy-making responsibilities, which include the administration of budgets of several millions of dollars and supervision of several thousand employes.

The problem, therefore, is determining whether cabinet officers have a "fixed term" as would satisfy the first requirement for the determination of a public officer. You have suggested in your request, and the argument has recently been advanced, that

they do not have the requisite "fixed term" to be considered "public officers" because they serve at the pleasure of the Governor.

The relevant section of the Administrative Code of April 9, 1929, P.L. 177, is section 208, as amended, 71 P.S. §68, which provides that the terms of office of persons appointed by the Governor shall be as follows:

(a) The Attorney General and the Secretary of the Commonwealth serve during the pleasure of the Governor.

(b) The term of the Superintendent of Public Instruction (now the Secretary of Education) shall be four years.

(c) The heads of other administrative departments shall hold office for terms of four years coterminous with that of the Governor, and until their successors have been appointed and qualified.

Superficially, therefore, since practically all heads of administrative departments have a fixed four-year term, then under the foregoing cases, one would conclude that cabinet officers are public officers under Article III, §27. However, an argument can be made that the "fixed term" of such officers is illusory for purposes of Article III, §27, because they can be removed by the governor who appoints them.

Article VI, §7, of the Pennsylvania Constitution provides: ". . . Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed."

As a general rule, under Article VI, §7, of the

Constitution, officers are removable at the pleasure of the appointing power even though the appointments are made for a *statutorily fixed term.* For example, in Kraus v. Philadelphia, 337 Pa. 30, 10 A. 2d 393 (1940), a real estate assessor was elected by the city council for a period of five years. During the five-year term, the council, by resolution, sought to remove Kraus from the office. The court held that council, under the authority of Article VI, §4 (now §7), had an "untrammeled" right, with or without cause, to remove plaintiff as they saw fit. See also Com. ex rel. v. Likeley, 267 Pa. 310, 110 Atl. 167 (1920); Muir v. Madden, 286 Pa. 233, 133 Atl. 226 (1926); Com. ex rel. v. Hiltner, 307 Pa. 343, 161 Atl. 323 (1932); Com. ex rel. Houlahen v. Flynn, 348 Pa. 101, 34 A. 2d 59 (1943); and Schluraff v. Rzymek, 417 Pa. 144, 208 A. 2d 239 (1965).

Comparing the cases cited under Article VI, §7, with those cited under Article III, §27, with regard to the "fixed term" standard, we see that those cases under Article III, §27, did not closely analyze the fixed term requirement, but gave a greater weight to the nature of the duties involved. In cases under Article VI, §7, which more directly analyzed the seeming conflict between an employe with a "fixed term" and the right of removal as set forth in Article VI, §7, courts concluded that a fixed term is in reality not a fixed term, but rather a fixed term only so long as the appointing authority so dictates.

Thus, the conclusion which one draws from cases under Article VI, §7, is that the "fixed term" requirement is in reality a legal fiction because while it sets time boundaries, it does not make them immutable; the appointing authority can change

them. The "fixed term" requirement can thus not serve as the key legal standard against which to gauge a particular office, but rather the key determination is the nature of the duties of the particular office.

From a policy standpoint, it makes no logical sense to hold a cabinet-level officer, having responsibilities for a large bureaucracy, is not a "public officer" for purposes of Article III, §27, while finding a borough supervisor, for example, with limited responsibilities, to be one merely because one is elected for a fixed term while the cabinet officer may be removable at will.

In any event, it is clear from the terms of 71 P.S. §68 that all cabinet officers, except for the Attorney General and Secretary of the Commonwealth, meet the "fixed term" requirement. However, as the cases so amply indicate, the "fixed term" is somewhat of a misnomer given the power of the Governor to remove any cabinet officer at will.[4] Thus, even though the statute may facially distinguish between cabinet officers vis-a-vis their terms of office, in reality all cabinet officers are subject to the same removal power and as such should not be treated differently. Additionally, it would make absolutely no sense to allow the Attorney General to receive an increase in compensation while denying it to the others.

Therefore, it is our conclusion that cabinet offi-

4. By constitutional amendment approved by the voters in May, 1978, the Attorney General will be elected for a fixed four-year term commencing the third Tuesday in January, 1981. However, until that first election, the Attorney General serves at the pleasure of the Governor (Act no. 1978-25).

cers, based upon their extensive policy-making responsibilities, are public officers under Article III, §27, and as such would be prohibited from receiving a salary increase or decrease during their terms of office.