**Karl C. WEHR**

v.

**The BURROUGHS CORPORATION.**

Civ. A. No. 76–581.

United States District Court, E. D. Pennsylvania.

June 17, 1977.

---

Alan M. Lerner, Bruce L. Thall, Philadelphia, Pa., for plaintiff.

Carter R. Buller, Francis M. Milone, Daniel J. Whelan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff, Karl C. Wehr, was discharged by defendant Burroughs Corporation in August, 1975. In the first count of his complaint plaintiff alleged that the dismissal violated his rights granted by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* In the second count plaintiff asserted that his discharge by defendant constituted a breach of contract and violated the public policy of Pennsylvania. The face of the complaint contained a demand for a jury trial and the prayer for relief sought backpay, liquidated damages, reinstatement, attorney's fees, and an injunction barring defendant from further violations of the ADEA. Defend-

ant has now moved for judgment on the pleadings[1] on count two of plaintiff's complaint and to strike plaintiff's demand for a jury trial.

## PLAINTIFF'S BREACH OF CONTRACT CLAIM.

Count two of plaintiff's complaint charged that since the plaintiff's dismissal was motivated by age discrimination, it constituted a breach of his employment contract and violated Pennsylvania public policy. Since this contract claim is obviously bottomed in state law, we will address defendant's motion to dismiss according to our understanding of the applicable Pennsylvania statutes and legal precedents in this area.

■ Both parties apparently concede that plaintiff's employment contract was a contract terminable at will. Under Pennsylvania law, it is clear that no action for breach of contract will lie for a discharge under an employment contract at will unless the severance of the employment relationship violates "[a] clear mandate of public policy." *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174, 180 (1974); *see McGinley v. Burroughs Corp.*, 407 F.Supp. 903, 910 (E.D.Pa.1975). This principle of contract law is referred to as the public policy exception.

Plaintiff contends that the Pennsylvania Human Relations Act (Pennsylvania Act), 43 P.S. §§ 951 *et seq.*, evidences a strong public policy favoring the eradication of age discrimination in all phases of employment and that the existence of an alternative remedy for this genre of employment discrimination should not preclude the creation of an independent cause of action in contract. Support for plaintiff's position, at least with respect to the interpretation of the Pennsylvania Act, may be found in Judge Green's opinion in *McGinley v. Burroughs Corp., supra.*

On the other hand, defendant contends that no contract remedy is mandated by Pennsylvania public policy, and that, quite the contrary, recognition of a contract action in this context would contravene the policy of the Pennsylvania Act. Thus, the question for resolution is whether the application of the public policy exception is required by the Pennsylvania Act or some other consideration.

■ Plaintiff correctly asserts that the Pennsylvania Act manifests a clear policy favoring elimination of age discrimination in employment. That Act states: "It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . age . . . and to safeguard their right to obtain and hold employment without such discrimination. . . ." 43 P.S. § 952(b). Reasoning that this policy preamble satisfied the public policy exception as it exists in Pennsylvania, Judge Green has concluded that a contract cause of action was proper to remedy a complaint of age discrimination in employment. *McGinley v. Burroughs Corp., supra* at 910. However, and with due respect to the views of our learned brother, Judge Green, a further investigation of the Pennsylvania Act and rationale underlying the public policy exception leads us to find no contract cause of action here. A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.

In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), the plaintiff-employee filed a complaint alleg-

---

1. Although defendant has entitled his motion as a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), we believe it more appropriate to address it as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

ing that he had been fired for filing a workmen's compensation claim. The Supreme Court of Indiana reversed the trial court's dismissal of the complaint for failure to state a cause of action. Relying upon the salutary policy underlying the workmen's compensation scheme, the court concluded that a discharge in retaliation for an employee availing himself of the statutory design violated public policy. The court reasoned: "By denying transfer and allowing the trial court's dismissal to stand we would be arming unethical employers with common law authority. Once an employee knows he is *remediless* if retaliatorily discharged, he is unlikely to file a claim. What then is to prevent an employer from coercing an employee? Upholding retaliatory discharge opens the door to coercion and other duress-provoking acts." *Id.* at 428 (emphasis added). It is clear that the absence of a remedy was essential to the court's reasoning.

Similarly, in *Petermann v. Teamsters Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), the court held that the trial court erred in dismissing a contract claim in which an employee alleged that he had been fired for refusing his employer's demand that he commit perjury before a committee of the state legislature. While recognizing the availability of criminal sanctions to penalize the perjury, the court decided that an additional civil remedy to aid the employee would allow full protection of the state's condemnation of perjury.

While choosing to create a tort, rather than contract action, the Supreme Court of Oregon took a similar approach in *Nees v.*

*Hock*, 272 Or. 210, 536 P.2d 512 (1975). In *Nees*, the plaintiff alleged that she had been dismissed for accepting jury duty in contravention of her employer's orders. The court noted that "[i]f an employer were permitted with impunity to discharge an employee for fulfilling [an] obligation of jury duty, the jury system would be adversely affected. The will of the community would be thwarted. For these reasons we hold that the defendants are liable for discharging plaintiff because she served on the jury." *Id.* at 516.

■ It is clear then that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.[2]

■ Plaintiff in this case obviously does not fulfill the second factor. The Pennsylvania Act not only establishes one's right to be free from a number of types of discrimination, but also creates a remedy to safeguard these rights. Although the procedure is not exclusive, the Pennsylvania Act outlines a comprehensive administrative procedure to effectuate the rights guaranteed by the Act. *See* 43 P.S. § 959 (Supp. 1976–77). If the plaintiff desires to proceed directly to the courts of the Commonwealth without taking advantage of the adminis-

---

**2.** *McGinley* did not discuss the *Geary* case, but rather relied upon two other Pennsylvania cases for the proposition that "[a]ny contract . . . which is terminated for a reason contrary to the public policy of Pennsylvania gives rise to a claim for a breach of contract." 407 F.Supp. at 911, *McGinley* first cited *Burne v. Franklin*, 451 Pa. 218, 301 A.2d 799 (1973) in which the Supreme Court of Pennsylvania voided a time limitation in an accidental death benefits clause of an insurance policy. The Pennsylvania court concluded public policy was violated by any clause providing that benefits would only be paid if the insured died within 90 days of the accident causing death.

*Id.* at 802. The court in *McGinley* also cited *W. J. McCahan Sugar Refining & Molasses Co. v. Stoffel*, 41 F.2d 651 (3d Cir. 1930). *Stoffel* voided an injured longshoreman's agreement to release the defendant from liability in exchange for the defendant's promise to make payments to him in accordance with a state workmen's compensation scheme. *Id.* at 653. One of the four reasons that the court relied on in voiding the release agreement was that it contravened public policy. Since neither *Stoffel* nor *Burne* involved plaintiffs with access to alternative remedies, those cases do not counsel against our view of the public policy exception.

# 1056

trative remedies, he may do so. *Id.* § 962(b) (Supp. 1976–77).

Two reasons render this case particularly appropriate for recognition of the remedy limitation inherent in the public policy exception. First, in addition to proscribing age discrimination in employment, the Pennsylvania Act proscribes employment discrimination based upon "race, color, religious creed, ancestry, sex, handicap, or disability, use of guide dogs because of blindness of the user, . . . sex, or national origin." *Id.* § 952(b) (Supp. 1976–77). We are aware of no policy which would distinguish between these different types of discrimination in the creation of contract remedies. Thus, under plaintiff's view of the public policy exception, all types of discrimination prohibited by the Pennsylvania Act could support the creation of independent contract remedies. We doubt that Pennsylvania courts would find the creation of such duplicative litigation fosters the policy of the Pennsylvania Act. Second, we are wary of plaintiff's argument where the source of "the clear mandate of public policy" also creates a means of redress for the aggrieved individual. In such a case, sound policy dictates that the statutory remedial scheme be adhered to since we can presume that the legislature would have provided additional relief in the statute if it thought it necessary.[3]

In sum, we hold that activation of the public policy exception not only requires "a clear mandate of public policy", but also a situation where the employee is without remedy. Since the Pennsylvania Act establishes a remedy as well as voicing a public policy against age discrimination in employment, we find the creation of a contract remedy inappropriate in this case. Therefore, Count two of the complaint will be dismissed.[4]

## DEMAND FOR A JURY TRIAL.

Plaintiff seeks backpay, liquidated damages, reinstatement, attorney's fees, and an injunction prohibiting further violation of the ADEA. The face of the complaint contained a demand for a trial by jury and the defendant has moved to strike this demand. Defendant contends that the relief requested by plaintiff is exclusively equitable in nature. Defendant concludes, therefore, that, since the seventh amendment guarantee of a jury trial applies only to legal claims, plaintiff has no right to a jury trial on any of its claimed elements of damages.

The seventh amendment provides the parties with a right to a trial by jury "[i]n suits at common law, where the sum in controversy shall exceed twenty dollars." The fact that the right of recovery was created by statute rather than the common law does not affect the seventh amendment guarantee so long as "the action involves rights and remedies typically enforced in an action at law." *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

In *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), the Third Circuit recognized that "a suit for damages consisting of back wages arising out of the breach of an employment agree-

---

**3.** While it is not clear from *Geary v. United States Steel Corp., supra,* the Supreme Court of Pennsylvania suggested that it might adopt a balancing approach in the application of the public policy exception. The court stated: "On balance, whatever public policy imperatives can be discerning [sic] here seen to militate against [the creation of a non-statutory cause of action]." 319 A.2d at 180. If this analysis were adopted by the Pennsylvania courts, we still could not apply the exception for the two reasons noted in the text.

**4.** Count two of plaintiff's complaint also alleged that he had been discharged without notice in violation of 43 P.S. § 291, and thus he

was entitled to damages under 43 P.S. § 292. See paragraphs 17 and 25 of plaintiff's complaint. Neither of the parties addressed these claims in their memoranda. Section 291 provides that an employer may not discharge an employee without notice unless the employee is also free to terminate his employment without notice to the employer. Plaintiff has alleged that defendant requires employees to give two weeks notice before leaving his job. Thus, plaintiff appears to have stated a cause of action under 43 P.S. § 291. Therefore, our Order with respect to count two will only dismiss plaintiff's claim for breach of contract.

ment is a routine contract action where the parties would be entitled to a jury under the Seventh Amendment." *Id.* at 838. Therefore, the court concluded that parties to a suit for backpay under the ADEA were entitled to a jury trial. *Id.* at 839. However, *Rogers* does not end our inquiry since the court there was presented solely with claims for monetary relief. Thus the question becomes whether the right to a jury trial on the issue of backpay as established by *Rogers* is altered by plaintiff's additional requests for equitable relief.

A number of courts have grappled with the problem of the availability of a jury trial where the plaintiff has requested reinstatement and injunctive relief in addition to backpay. Two recent circuit court decisions are fairly representative of the split in authority which has developed over this issue. In *Pons v. Lorillard*, 549 F.2d 950 (4th Cir. 1977), the Fourth Circuit held that plaintiff's right to a jury trial on the backpay issue was unaffected by an added claim for equitable relief,[5] while the Sixth Circuit, in *Morelock v. NCR Corp.*, 546 F.2d 682 (6th Cir. 1976), has characterized an action seeking reinstatement with backpay as essen-

tially equitable in nature and thus not within the ambit of the Seventh Amendment guarantee.[6] Since the Third Circuit has determined that a claim solely for money damages is legal in nature entitling the parties to a jury trial, we are inclined to adopt the stance taken in *Pons v. Lorillard, supra.*

In *Morelock*, the court commenced its analysis, noting: "The propriety of jury trials in cases presenting such mixed questions of law and equity is determined by the nature of the issue to be tried." 546 F.2d at 685, *citing Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). The court ascertained a close relationship between the remedial portions of the ADEA and the enforcement powers granted courts in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.* and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* 546 F.2d at 686–89. In both Title VII and FLSA cases, the availability of monetary relief in conjunction with injunctive relief has been deemed to be equitable in nature or an integral part of the equitable remedy.[7] *Id.* at 687–88. The court also recognized that the enforce-

---

5. *Accord, Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123, 1130–32, (N.D.Ill.1976); *Cleverly v. Western Elec. Co.*, 69 F.R.D. 348, 350–52 (W.D.Mo.1975); *Chilton v. National Cash Register Co.*, 370 F.Supp. 660, 662–66 (S.D.Ohio 1974).

6. *Accord, Looney v. Commercial Union Assurance Companies*, 428 F.Supp. 533, 537–38 (E.D. Mich.1977); *Hannon v. Continental Nat'l. Bank*, 427 F.Supp. 215, 218–22 (D.Colo.1977); *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1338–40 (E.D.Pa.1976).

7. The district courts denying the parties a right to a jury trial on these facts have relied heavily on the similarities between Title VII and the ADEA. *See, e.g., Platt v. Burroughs, supra* at 1339. One court has noted that "it would be anomalous to hold that a jury trial is required to remedy age discrimination in employment but not to remedy discrimination in employment based on race, sex, national origin, and religion." *Hannon v. Continental Nat'l. Bank, supra* at 221–22. However, one commentator has discredited any apparent anomaly, stating: "While exclusion of jury trial from Title VII reflects a fear of jury prejudice against the plaintiff, there is no reason to assume that older workers will be confronted by similar

jury hostility." Note, The Age Discrimination in Employment Act of 1967, 90 Harv.L.Rev. 380, 391–92 n. 70 (1976) (citations omitted).

The Fourth Circuit in *Pons* expressly discounted any analogy of ADEA remedies to those provided in Title VII. 549 F.2d at 952–53. The *Pons* court effectively contrasted the explicit inclusion of the language "legal relief" in the ADEA remedial provisions, 29 U.S.C. § 626(b)(c), with the statutory grant in Title VII, providing the court with authority to order certain specified forms of relief, 42 U.S.C. § 2000e-5(g). 549 F.2d at 952–53. The court concluded that "it is seen at once that the Age Act includes the terminology of a law action, traditionally calling for a jury verdict, rather than only a suit in equity . . . ." *Id.* at 953. *See Rogers v. Exxon Research & Engineering Co., supra* at 840 n. 10, where the court observed: "[Title VII and the ADEA] are not consistent because Congress made the ADEA enforcement provisions a hybrid of the Fair Labor Standards Act and Title VII. . . . While it is logically beguiling to interpret the statutes in harmony, their clear language often will not permit it. Consequently, the decisional law under Title VII must be read with this caveat in mind."

ment sections of the FLSA, 29 U.S.C. §§ 216, 217, are incorporated into the ADEA by 29 U.S.C. § 626(b). 546 F.2d at 688. Noting that the breadth of power and discretion in fashioning remedies granted the court by the ADEA carried the traditional indicia of equitable relief and resembled the powers vested in the court by Title VII and the FLSA, the Sixth Circuit concluded that a claim for backpay with reinstatement and injunctive relief presented equitable issues not suitable for a trial by jury. *Id.* at 689.

The Fourth Circuit reached a different result from *Morelock* by employing a different analysis. Rather than initially looking at the remedies requested as a whole, the court followed the mandate of *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) to determine whether there were both legal and equitable claims in the case. 549 F.2d at 953. To accomplish this, the Fourth Circuit focused solely upon plaintiff's request for lost wages. After noting that the remedial sections of the FLSA are part of the ADEA, the court acknowledged that claims for backpay made under the private enforcement section of the FLSA, 29 U.S.C. § 216(b), are "legal in nature and uniformly accorded a jury trial." 549 F.2d at 953. The court decided that claims for reinstatement and injunctive relief were equitable in nature. Having decided that plaintiff was seeking both legal and equitable relief, the Fourth Circuit applied the *Ross* test to determine if plaintiff's right to a jury trial on the backpay claim withstood the addition of several equitable claims.

The ultimate analysis to determine whether a suit is one "at common law" within the Amendment seems to be the three-pronged classical test: (1) Is the issue legal rather than equitable under the custom of the courts of law; (2) Is the remedy legal; (3) Is the issue triable to a jury given the jurors' practical abilities and limitations? Where issues of law and equity are intertwined in one suit, those meeting the three-pronged test merit a trial by jury.

*Id.* (citations and footnote omitted); *see Ross v. Bernhard, supra,* 396 U.S. at 538 n. 10, 90 S.Ct. 733.

■ The *Pons* court concluded that the first prong was satisfied since employment discrimination claims seeking backpay under the ADEA were "analogous to the common law action for breach of contract by wrongful discharge or an action in tort, with the Age Act creating the legal duty." 549 F.2d at 954. This conclusion is reinforced by the Third Circuit's observation that a suit for backpay by an employee "is a routine contract action." *Rogers v. Exxon Research & Engineering Co., supra* at 838. It is also clear that the remedy sought, money damages, fulfills the second requisite of the *Ross* test. Finally, we agree with the *Pons* court that the computation of relief in this case is well within the realm of the jury's abilities. 549 F.2d at 954.

In sum, since *Rogers* has decided that a claim for backpay standing alone entitles the plaintiff to a jury trial on that issue, we cannot accept the analysis proposed by the Sixth Circuit in *Morelock*. We are presented with a suit involving both legal and equitable remedies, and thus we shall apply the three-pronged test of the *Ross* case. Since all the elements of that test are fulfilled, plaintiff retains his right to a jury trial on the backpay claim notwithstanding his additional requests for equitable relief. Therefore, defendant's motion to strike plaintiff's request for a jury trial will be denied.