**Eugene KRUSHINSKI, Plaintiff,**

v.

**ROADWAY EXPRESS, INC.,**
**Defendant.**

**Civ. No. 84–1006.**

United States District Court,
M.D. Pennsylvania.

May 30, 1985.

Peter Loftus, Scranton, Pa., for plaintiff.

Jeffrey Ivan Pasek, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff Krushinski instituted this Title VII action on July 25, 1984 after having obtained a right to sue letter from the Equal Employment Opportunity Commission.  Plaintiff, previously employed as a dock worker by the defendant, Roadway Express, Inc., alleges that he was dis-

charged because of his religious beliefs. As a member of The Worldwide Church of God, plaintiff maintains that his religion observes a doctrine which requires abstaining from work from Friday at sundown until Saturday at sundown. Plaintiff alleges defendant denied him time off from work to observe the Sabbath, and as a result, plaintiff was forced to use personal and sick-leave time. When these days were exhausted, plaintiff apparently did not report for work and was subsequently suspended and terminated from his employment.[1]

Plaintiff's action is brought pursuant to 42 U.S.C. § 2000e et seq. [Title VII]. Defendant has moved for summary judgment by motion dated February 7, 1985 and filed a brief in support thereof on the same date. The plaintiff filed a brief in opposition to the motion dated March 4, 1985 and the defendant filed a reply brief dated March 22, 1985. The motion is now ripe for disposition. For the reasons set forth below, the defendant's Motion for Summary Judgment will be granted.

Title VII, as amended, makes it an unlawful employment practice for an employer to discriminate against an employee because of his religion. 42 U.S.C. § 2000e–2(a)(1). Religion is defined to include all aspects of religious observance and practice unless the employer demonstrates that he cannot "reasonably accommodate" the employee's religious needs without "undue hardship." 42 U.S.C. § 2000(e)(j). In *Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), a case analogous to the one presented here, the Supreme Court held that TWA, which had made reasonable efforts to accommodate respondent's religious needs, did not violate Title VII since an agreed-upon seniority system is not required to give way to accommodate religious observances and to require TWA to bear more

than a *de minimis* cost in order to give respondents Saturdays off would be an undue hardship. In *Hardison,* plaintiff was an aircraft maintenance stores clerk, whose work was in demand by his employer twenty-four hours of every day. The plaintiff, also a member of the The Worldwide Church of God, refused to work on all holydays as well as every Saturday so that he could observe the Sabbath. TWA, his employer, accommodated his observance of the holydays but refused to accommodate his demand to have every Saturday free. The court concluded that TWA had engaged in significant efforts to accommodate his needs. First, TWA and the airline had adopted a seniority system which minimized the number of occasions when an employee must work when he would prefer to attend to other needs. Second, the company reduced its weekend work force to the bare minimum needed. Third, the company indicated it would approve any exchange of shifts for Hardison that could be arranged with the union. Accordingly, the Supreme Court found that the employer's duty of reasonable accommodation under Title VII was not violated. *Id. See also Brener v. Diagnostic Center Hospital,* 671 F.2d 141 (5th Cir.1982); *Turpen v. Missouri-Kansas-Texas Railroad Company,* 736 F.2d 1022 (5th Cir.1984); *Equal Opportunity Commission v. Caribe Hilton International,* 597 F.Supp. 1007 (D. Puerto Rico 1984); *Niederhuber v. Camden City Vocational and Technical School District Board of Education,* 495 F.Supp. 273 (D.N.J.1980), *aff'd.* 671 F.2d 496 (3d Cir. 1981).

■ Regarding an established seniority system, Title VII's reasonable accommodation mandates only that an employer make good faith efforts to accommodate an employee's religious beliefs. It does not require that in doing so an employer override an established seniority system, nor does it

---

**1.** The plaintiff had initially filed a grievance under Article 37 of the union contract when he was suspended. Following a hearing held before the Joint Area Committee on September 8, 1982, the grievance was denied. At the hearing, plaintiff asserted that he was a victim of religious discrimination. The plaintiff also filed a grievance after his discharge concerning the propriety of the discharge. The Joint Area Committee considered this grievance on November 11, 1982 after which the grievance was denied and the discharge upheld.

require that an employer take steps that go beyond those a reasonable person would take. *See Turpen*, 736 F.2d at 1028. The Supreme Court in *Hardison* explained:

> It would be anomalous to conclude that by "reasonable accommodation" Congress meant that an employer must deny the shift in job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

*Hardison*, 432 U.S. at 81, 97 S.Ct. at 2275. The Court further observed that its conclusion is supported by the fact that seniority systems are afforded special treatment under Title VII itself. *Id.* See 42 U.S.C. § 2000e-2(h). Since there was no suggestion of discriminatory intent and it was only coincidental that in the plaintiff's case the seniority system acted to compound his problems in exercising his religion, the Court determined that TWA was not required by Title VII to "carve out a special exception to its seniority system in order to help Hardison to meet his religious obligations." *Id.* at 82–83, 97 S.Ct. at 2275–2276.

Additionally, while it is well understood that individuals bringing a Title VII action are under no burden to propose to their employers specific means of accommodating their religious practices, it is also recognized that they have a duty to cooperate with the measures suggested by their employers. *See Brener*, 671 F.2d at 145. The Fifth Circuit went on to explain:

> These cases confirm what the statute's use of the term "reasonable" suggests: bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business. Although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his

needs through means offered by the employer. A reasonable accommodation need not be on the employee's terms only.

*Id.* at 145–46.

■ In the case *sub judice*, the efforts made by Roadway Express to accommodate plaintiff's religious needs are certainly comparable to those which existed in *Hardison*.[2] Prior to terminating plaintiff's employment, Roadway officials investigated opportunities which might be available to the plaintiff under the union contract. Due to the plaintiff's low seniority, he was not able to hold a bid job that would allow him to have time off to observe his Sabbath. Roadway also sought assistance from the plaintiff's union. The union determined that they would not agree to any exceptions in the plaintiff's case. They stated they would not tolerate any deviation from the equal application of the seniority in job bidding procedures to all employees. The company then wrote to twenty-two employees all of whom held bid jobs which would have accommodated the plaintiff. The company explained the plaintiff's religious needs and asked each of these employees to consider changing shifts with him to allow him to observe his Sabbath. No affirmative responses were received. Copies of each of these letters were also sent to the plaintiff. After the letters were sent, plaintiff made no effort to explore the possibilities for accommodation by means of swapping shifts with another employee. Roadway, thereafter, applied its normal progressive disciplinary system to plaintiff's absenteeism. After plaintiff had accumulated more than twenty unexcused absences in 1982 he was discharged. The court therefore concludes that the efforts made to accommodate the plaintiff's religious need were reasonable.

In the instant case, plaintiff's work schedule was determined on the basis of a routine application of the seniority system

---

**2.** Pursuant to Local Rule 401.4, movant submitted a statement of 149 material facts for which, movant contended, there was no genuine issue to be tried. Plaintiff did not oppose this statement as required under the rule thereby admitting the validity of all relevant factual assertions contained in the submission.

applicable to all of the defendant's dock workers. To have accommodated plaintiff's needs Roadway would have been required to ignore seniority provisions of the contract which dictate when an employee shall work and when an employee shall have time off. Under this seniority system, Roadway was not free to let plaintiff have time off from sundown Friday to sundown Saturday unless every other employee with more seniority was first offered the same opportunity.

Plaintiff has suggested only two possible ways that Roadway could have accommodated his religious needs. Both of these suggestions, however, would have violated the collective bargaining agreement. First, plaintiff asserted that the company could have called in casuals [3] to replace him on weekends. The arbitration panel at plaintiff's hearing rejected this suggestion because under the union contract Roadway was not permitted to replace plaintiff with a casual employee since casual employees may not be used until all employees on the call board have first been called to work. Second, the plaintiff suggested that the company could simply let him take time off whenever required to observe his religion.[4] This also would have violated the collective bargaining agreement for, as the union insisted, plaintiff should have time off only in his seniority position. Additionally, if Roadway did allow plaintiff to take time off for his religious observances as requested, the union could insist that every employee receive the same right for additional excused absences regardless of whether they were based on religious needs or not. Accordingly, since the duty to accommodate does not require an employer to take steps inconsistent with an otherwise valid agreement and in order to accommodate plaintiff the employer would have to violate the union contract, the decision to reject plaintiff's suggestions for accommodation was not improper.

The plaintiff's additional claims of discriminatory treatment must also be dismissed since at the time of his deposition he indicated he had no personal knowledge of anyone who has been discriminated against on account of religion besides himself. He also stated that his allegations regarding a policy of classifying and segregating applicants in the employment process by religion did not apply to him nor was he ever purposely assigned to a shift which would conflict with his religious observances. All work assignments were governed by the seniority system that governed all dock workers covered by the union contract. He further indicated that the remaining allegations in his complaint either do not apply to him directly or are related solely to the disciplinary letters issued to him as a result of his absenteeism. There was no intimidation, harassment or other discriminatory practices created by Roadway for him or anyone else on account of religion. *See* Krushinski Deposition, September 13, 1984, attached to Defendant's Motion for Summary Judgment as Exhibit 2 Document No. 17 of the Record.

Therefore, the court will grant the defendant's Motion for Summary Judgment regarding the plaintiff's remaining Title VII claims.

An appropriate Order will enter.

---

**3.** "Casuals" are defined by the collective bargaining agreement to be "an employee who maintains seniority with another Employer in the industry or is currently employed outside the industry." The agreement further states, "[C]asual employees are employees used basically to cover situations such as replacements for absenteeism.... Employers use of casuals as a subterfuge to evade this Agreement or deprive regular employees of their normal work opportunity shall subject the Employer to the grievance procedure." National Master Freight Agreement at 90, attached to Motion for Summary Judgment, Document No. 17 of the Record.

**4.** The Joint Area Committee rejected both of plaintiff's suggestions of accommodations as being prohibited by the Union Contract. *See* Baum Affidavit at 2, Document 17 of the Record. The court notes that plaintiff had no other suggestions and, aside from the filing of the grievances, never requested help from fellow employees or his union. *See* Krushinski Deposition at 75, Document 17 of the Record.