Eugene **KRUSHINSKI**, Plaintiff,

v.

**ROADWAY EXPRESS, INC.,**
Defendant.

Civ. No. 84–1485.

United States District Court,
M.D. Pennsylvania,
Third Circuit Division.

Sept. 5, 1985.

Peter G. Loftus, Scranton, Pa., for plaintiff.

Jeffrey Ivan Pasek, Paul Feldman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

■ Plaintiff began this action in the Court of Common Pleas for Monroe County, Pennsylvania on September 11, 1984 by filing a praecipe for a writ of summons. After a formal complaint was filed October 22, 1984, Defendant Roadway Express, Inc. [Roadway] filed a petition for removal[1] in this court pursuant to 28 U.S.C. § 1446, dated November 6, 1984. On February 1, 1985, defendant filed a Motion to Dismiss the Complaint, attaching deposition testimony and an affidavit thereby requesting the court to treat the motion as one for summary judgment pursuant to Fed.R. Civ.P. 56. Plaintiff opposed this motion by brief filed March 6, 1985 to which defendant replied on March 22, 1985. Plaintiff failed to file any counteraffidavit or deposition testimony in opposition to that submitted by defendant in support of its Motion for Summary Judgment. By Order dated May 9, 1985, plaintiff was required to

---

1. Plaintiff argues that this court does not have subject matter jurisdiction over this action and that defendant improperly removed to this court. Plaintiff bases this contention upon the fact that he alleged that defendant maintained its principal place of business in Pennsylvania, thus diversity of citizenship does not exist. Defendant, however, has submitted affidavits demonstrating that Roadway is incorporated in the State of Deleware and maintains its principal office in the State of Ohio. Plaintiff does not submit counteraffidavits but argues instead that the court may only examine the face of the complaint and may not properly consider defendant's affidavits. This argument is simply without merit. *See e.g., Rubin v. Baltimore and Ohio Railroad*, 324 F.Supp. 204 (E.D.Pa.1971); Wright, Miller & Miller, § 3721 at 211. The court is satisfied that jurisdiction exists pursuant to 28 U.S.C. § 1332. *See* Petition for Removal, Document 1 of the Record.

file a supplemental brief responding more specifically to defendant's Motion for Summary Judgment. Plaintiff filed his amended memorandum on May 20, 1985 and defendant filed its supplemental reply on May 30, 1985. The motion is now ripe for disposition. For the reasons set forth below, defendant's motion for summary judgment will be granted.

## I. FACTS

The gravamen of plaintiff's complaint centers upon his termination of employment from Roadway on September 24, 1982.[2] Plaintiff, previously employed as a dock worker by Roadway, alleges that he was discharged because of his religious beliefs. As a member of The Worldwide Church of God, plaintiff maintains that his religion observes a doctrine which requires abstaining from work from Friday at sundown until Saturday at sundown. Plaintiff alleges defendant denied him time off from work to observe the Sabbath and, as a result, plaintiff was forced to use personal and sick leave time. When these days were exhausted, plaintiff did not report for work and was subsequently suspended and terminated from his employment.

Plaintiff has alleged a myriad of claims:[3] a direct cause of action under the Pennsylvania Constitution; the common law tort claim of wrongful discharge; intentional infliction of emotional distress; the common law claim of breach of contract; claims arising under the Pennsylvania Human Relations Act; as well as conspiracy, damage to reputation or credit rating and standing and invasion of privacy. These will be addressed *seriatim.*

## II. MERITS

### A. The Pennsylvania Constitution

■ Plaintiff alleges that Roadway violated Article I, Sections 3 and 4[4] of the Pennsylvania Constitution. In its Motion for Summary Judgment, Roadway argues that plaintiff cannot maintain a direct action under these sections because of the absence of governmental activity. The court agrees. "Article I is entitled "Declaration of Rights" and *all* of the first twenty-six sections of Article I which state those specific rights, must be read as limiting the powers of government to interfere with the rights provided therein." *Commonwealth v. National Gettysburg Battle Tower, Inc.,* 454 Pa. 193, 200, 311 A.2d 588 (1973). Further, in *Murphy v. Harleysville Mutual Ins. Co.,* 282 Pa.Super. 244, 258, 422 A.2d 1097, *cert. denied* 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d 211 (1981) the Pennsylvania Superior Court cited *Gettysburg Battle Tower, supra* for the proposition that the provisions of Article I are only intended to be limits upon the actions of state government. *See also NAACP v. Pennsylvania Public Utility Comm'n.,* 5 Pa.Commw. 312, 290 A.2d 704 (1972). Plaintiff relies upon *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894 (3d Cir.1983) to support his position that a direct cause of action exists, but the court finds this re-

---

**2.** Plaintiff had filed a related Title VII action in this court against defendant predicated upon the plaintiff's discharge. By Memorandum and Order dated May 30, 1985, summary judgment was granted in favor of the defendant. 626 F.Supp. 472.

**3.** Plaintiff maintains that the Pennsylvania Rules of Civil Procedure should apply. This contention is without merit. Fed.R.Civ.P. 81(c). Additionally, the doctrine of abstention does not apply to this action. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**4.** Sections 3 and 4 of Article I of the Pennsylvania Constitution provide:

Sec. 3 Religious Freedom

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Sec. 4 Religion

No person who acknowledges the being of a God and a future state of rewards and punishments shall, on account of his religious sentiments, be disqualified to hold any office or place of trust or profit under this Commonwealth.

liance misplaced. Contrary to plaintiff's assertion, the court does not read *Novosel* as recognizing a direct cause of action under the Pennsylvania Constitution for private sector employees. Rather, *Novosel* involved a non-union, at-will employee claiming a *common law* tort claim of wrongful discharge based upon public policy. Our Third Circuit Court of Appeals, *applying the logic of Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) found that Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy. *Novosel, supra* at 898. The decision did not rest upon the Pennsylvania Constitution.

*Geary, supra* recognized a non-statutory cause of action for a wrongful discharge of an at-will employee for reasons violative of public policy. While the *Geary* court looked to the Pennsylvania Constitution, it did so only to establish that the plaintiff was complaining of a matter of public policy and not to establish that a cause of action was arising directly from the Constitution itself. Plaintiff does not allege that Roadway's conduct can be classified as state action. An examination of Pennsylvania case law, *see Gettysburg Battle Tower, supra; Murphy, supra,* convinces this court that a direct cause of action under §§ 3, 4 of the Pennsylvania Constitution arises only when state action is present. Thus, the court finds no support for plaintiff's argument that he has a cause of action against a private employer flowing directly from the Pennsylvania Constitution and those claims will be dismissed.

## B. Wrongful Discharge

█ Plaintiff alleges that his termination due to his religious beliefs gives rise to a common law claim of wrongful discharge.

To maintain a common law tort claim of wrongful discharge, plaintiff must fit within the ambit of *Geary, supra*. In *Geary,* an at-will employee alleged he was wrongfully discharged after he told his superiors that a product manufactured by the compa-

ny was dangerous and defective. As a result of plaintiff's expression of reservations concerning the product, it was withdrawn from the market. Shortly thereafter plaintiff was fired. While Geary's complaint was ultimately dismissed, the Pennsylvania Supreme Court recognized that a common law cause of action for wrongful discharge may lie when the severance of the employment relationship results in violating a clear mandate of public policy. *Geary, supra* at 184–85, 319 A.2d 174. Finding that under the facts presented no clear public policy had been violated, the *Geary* court dismissed the action. *Id.* at 184, 319 A.2d 174.

> The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.

> It is clear that the whole rationale undergirding the public policy exception is the vindication or protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.

*Wehr v. Burroughs Corp.*, 438 F.Supp. 1052, 1054–55 (E.D.Pa.1977) *aff'd with modification on other grounds* 619 F.2d 276 (3d Cir.1980).

While it is clear that an employee's discharge based upon the employee's religious beliefs would violate public policy, plaintiff fails to meet the second requirement, *viz.,* that there is no other remedy available to vindicate the protected interest. Clearly, the Pennsylvania Human Relations Act "not only establishes one's right to be free from a number of types of discrimination,

but also creates a remedy to safeguard these rights." *Wehr, supra* 438 F.Supp. at 1055. Thus, like the *Wehr* court, this court finds it inappropriate to create a common law remedy in this instance.

The court further notes that plaintiff was not an at-will employee. Rather, he was a member of the International Brotherhood of Teamsters, Local 229 and the terms and conditions of his employment were governed by one or more collective bargaining agreements. Deposition of Eugene Krushinski, Document 3 of the Record, Exhibit 2 at 2–3. The narrow public policy exception enunciated by the *Geary* court is limited to employees "at-will." *Harrison v. Fred S. James, P.A. Inc.*, 558 F.Supp. 438, 444 (E.D.Pa.1983); *accord Smith v. Greyhound Lines, Inc.*, 614 F.Supp. 558 (W.D.Pa.1984). Because plaintiff was not an "at-will" employee and he had other statutory remedies available to him, he may not maintain a common law wrongful discharge claim. As a result, this claim will be dismissed.

### C. Breach of Contract

■ As noted *supra,* as a member of Local 229, the terms and conditions of plaintiff's employment were governed by the collective bargaining agreements negotiated between the Teamsters and Roadway. The issue raised by plaintiff's breach of contract claim is whether the alleged contract violation is properly brought pursuant to a state law contract claim or if the claim is governed exclusively by federal law pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a). Plaintiff's breach of contract claim is grounded upon the allegation that Roadway failed to comply with its own rules and regulations. Complaint, Document 1 of the Record, Paragraph 15H. It seems apparent that if Roadway is obligated to follow its rules and regulations as to plaintiff, that obligation arises under the collective bargaining agreement. Plaintiff, however, cites no authority in support of his contention.

■ Generally, Section 301 provides the exclusive remedy for violations of collective bargaining agreements. An employee, protected by such an agreement, may sue his employer only after he has pursued the grievance remedies provided by the contract, and he establishes that his right of fair representation was violated. *Vosch v. Werner Continental, Inc.*, 734 F.2d 149 (3d Cir.1984). In *Vosch,* our Court of Appeals held that plaintiff-employees had failed to state a cause of action pursuant to Section 301 when they failed to challenge the fairness or adequacy of their union's representation in the arbitration procedure. Here, plaintiff makes no claim that he was denied fair representation. The court concludes that any breach of contract claim must be governed by Section 301 of the Labor Management Relations Act and that plaintiff has failed to state a cause of action.

### D. Intentional Infliction of Emotional Distress

■ Plaintiff alleges that as a result of the intentional wrongful acts of the defendant plaintiff has suffered and will continue to suffer, *inter alia,* strain to his emotional and nervous system. Thus he attempts to set forth a claim for intentional infliction of emotional distress.

Pennsylvania recognizes such a cause of action and adopted the definition set forth in the Restatement Second of Torts, § 46(1):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subjected to liability for such emotional distress, and, if such bodily harm to the other results from it, for such bodily harm.

As a preliminary matter, the court must determine whether defendant's conduct may be regarded as so extreme as to permit recovery. *Id.* at comment h.

The court agrees with defendant that plaintiff's own deposition testimony belies such an assertion.

Q. Please take a look at page 4, paragraph 12[5] of the Complaint.

A. Okay.

Q. The reference in paragraph 12 to the defendant having a consistent policy, practice, custom, and scheme of hounding and harassing an employee is [sic] because of religion refers to the fact that you received warning and suspension letters as a result of absences, does it not?

A. Yes, it does.

Q. Does it refer to anything else?

A. No, it does not.

Q. In fact, you were not hounded or harassed in any other manner as a result of your religion aside from the fact that you received warning letters and suspension letters and a discharge notice relating to absenteeism?

A. That's correct.

Q. The reference in paragraph 12 to transferring does not apply to you, does it?

A. No, it does not.

Q. The reference in paragraph 12 to laying off does not apply to you, does it?

A. No, it does not.

Q. The reference in paragraph 12 to discharging refers only to the fact that you were discharged because of your attendance?

A. For religious reasons, yes.

Q. Based on the conflict between your religious observance and your scheduled work performance?

A. Right.

Q. The reference in paragraph 12 to denying common consideration refers to the fact that Roadway Express would not permit you to take off as excused absences your religious holidays and Sabbath, is that correct?

A. Yes.

Q. Does it refer to anything else?

A. No.

Deposition of Eugene Krushinski, 626 F.Supp. 472, Document 17 of the Record at 150–51.

Q. Did any non-managerial or non-supervisory employee ever harass you or discriminate against you with regard to your religious observances or beliefs?

A. No.

Q. Did any supervisor or managerial employee ever discriminate against you with regard to your religious observances or beliefs aside from the issuance of letters to you relating to your absences?

A. Aside from letters and terminations, if you are talking about harassment, no.

Q. You were not harassed in any way by any supervisor or manager of Roadway Express because of your religious beliefs or observances?

A. No.

Q. Did any supervisor or manager at Roadway Express ever make any derogatory comments to you about your religious beliefs or observances?

A. No.

Q. Aside from the letters that were issued to you warning you, suspending you, or discharging you because of your absence, is it correct to say that you were in no other way discriminated against on the basis of your religion?

A. Yes, you could say that.

*Id.* at 102–103.

Q. What were you referring to by harassment?

A. Letters.

Q. What letters?

A. The letters I received for taking off.

Q. Are those warning letters?

---

**5.** This paragraph 12 is contained in the complaint filed in Civ. No. 84–1006. In this action, however, paragraph 12 of the complaint is identical.

A. Some.

Q. Were there other letters?

A. Suspension.

Q. Those are formal disciplinary letters of some type that you are referring to?

A. Yes.

Q. Was there any other kind of harassment besides the letters that you were referring to?

A. From Roadway personnel?

Q. Yes.

A. No.

Q. Was there any other harassment that you were subjected to by anyone as a result of your observance of your religious beliefs?

A. No.

*Id.* at 50–51.

There is simply no evidence to support a finding of extreme and outrageous conduct on the part of the defendant. Further, plaintiff supplies no counter-affidavits which would refute this conclusion. As a result, this claim will be dismissed.

E.  Claims Pursuant to the Pennsylvania Human Relations Act

█  Plaintiff's remaining claims are brought pursuant to the Pennsylvania Human Relations Act [PHRA].[6] These claims are set forth in paragraph 15 of the complaint.[7]

6.  The Pennsylvania Human Relations Act provides in pertinent part:
    It shall be an unlawful discriminatory practice ... (a) for any employer because of the ... religious creed ... of any individual ... to discharge from employment such individual.... 43 P.S. § 955 (Supp.1985).

7.  Specifically, plaintiff contends that defendant practiced discriminatory limitations, segregation or classification of employees; maintained a discriminatory working atmosphere; maintained discriminatory wage, fringe benefits and leave of absence policies and practices; maintained discriminatory promotion and transfer policies; utilized discriminatory segregated job classifications or seniority rosters; maintained an established policy of disciplining, laying off

Defendant maintains that these claims are barred as plaintiff is required to file his complaint under the PHRA within 90 days of the discriminatory event. Defendant contends plaintiff's only timely claim arising under the PHRA is plaintiff's actual discharge since that occurred September 24, 1982 and the PHRA complaint was filed December 22, 1982. Therefore, all claims arising before the discharge would be untimely filed. Plaintiff, however, maintains these claims are viable in that they represent "continuing violations" which apparently culminated in plaintiff's discharge. The court finds it unnecessary to decide this issue in light of our finding that Roadway sufficiently attempted to accommodate plaintiff. Plaintiff maintains that he is not arguing that there is an affirmative duty to accommodate under the PHRA but rather the PHRA imposes a duty not to discriminate.

A careful review of plaintiff's documentation and memorandums, however, belies this assertion. Plaintiff's essential claim is that his religion requires abstention from working on Saturday. When plaintiff continued to report off for work on Saturday, he was discharged. This, plaintiff maintains was religious discrimination. The logical extension of this analysis is that Roadway should have allowed plaintiff to not report on Saturday. To do otherwise, would be discrimination. Thus, plaintiff, regardless of assertions to the contrary, is arguing that Roadway had a duty to accommodate.[8]

or discharging employees solely on religion; and knowingly allowed and encouraged ranking officers to maintain a policy of invidious discrimination.

8.  Plaintiff argues that he is not asking for special treatment. He contends that Roadway has accommodated Christian denominations which observe Saturday evening and Sundays as the Sabbath and, therefore, the same accommodation should be afforded to his religion. Plaintiff does not support this bald and conclusory statement with any factual support or deposition. Indeed, he admits he is unaware of any other employee having been granted time off for religious observance. Plaintiff does not cite one employee who has been accommodated while he has not. Further, plaintiff, in his deposition,

Even if the PHRA required an employer to accommodate an employee's religious observance of his Sabbath, and the court expresses no opinion on the issue, this court has already determined that the efforts made by Roadway to accommodate plaintiff's religious need were reasonable. *Krushinski v. Roadway Express, Inc.*, 626 F.Supp. 472 (1985).

In the instant case, plaintiff's work schedule was determined on the basis of a routine application of the seniority system applicable to all of the defendant's dock workers. To have accommodated plaintiff's needs Roadway would have been required to ignore seniority provisions of the contract which dictate when an employee shall work and when an employee shall have time off. Under this seniority system, Roadway was not free to let plaintiff have time off from sundown Friday to sundown Saturday unless every other employee with more seniority was first offered the same opportunity.

*Id.* at 475. A duty to accommodate does not require an employer to take steps inconsistent with an otherwise valid agreement and, in order to accommodate plaintiff, the employer would have to violate the union contract. *Id.* at 475. *See also Estate of Thornton v. Caldor, Inc.*, — U.S. ——, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985) (Connecticut statute requiring absolute accommodation violates the Establishment Clause).

To the extent the PHRA could be construed as requiring accommodation, the court has already found Roadway's efforts were sufficient.

admits that shifts are assigned on the basis of seniority. Deposition of Eugene Krushinski, Document 17 of the Record at 99 [Civ. No. 84–1006]; Document 3 of the Record at 100. In fact, plaintiff avers that the only other example of discrimination by Roadway that he could remember was a person who requested and was denied two hours off on Sunday. *See* 626 F.Supp. 472, Document 17 of the Record at 98–99.