John **HALSTEAD** and Henrietta M. **Halstead**

v.

**TOWNSHIP OF CUMRU, et al.**

**Civ. A. No. 86–3225.**

United States District Court, E.D. Pennsylvania.

Nov. 7, 1986.

Daniel B. Huyett, Reading, Pa., for plaintiffs.

Carl A. Fritton, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The instant case arises from Cumru Township's acceptance of the resignation of John Halstead as Chief of Police. Halstead submitted a letter of resignation on September 10, 1985, to be effective October 11, 1985. Before the Township Commissioners met to accept the resignation at a public meeting, Halstead submitted another letter rescinding his September 10 letter and informing the Commissioners that he would resume his duties as Chief of Police when his month-long vacation ended on October 11, 1985. Notwithstanding Halstead's hand-delivery of the rescission letter on the morning of September 17, 1985, the Commissioners formally accepted Halstead's resignation at a public meeting that same evening and informed him of their action by a letter dated September 18, 1985.

On June 2, 1986, plaintiff filed a complaint in which he alleges that he was removed from office without due process of law and amid public charges of impropriety. Thus, he avers that defendants, including the individual commissioners serving at the time of the incident and those presently serving, violated his civil rights in contravention of 42 U.S.C. § 1983 and § 1985(3). In addition, he alleges several pendent state law claims: wrongful discharge, breach of contract and intentional interference with contract. Finally, Halstead's wife and co-plaintiff alleges the derivative claim of loss of consortium. Halstead seeks a declaratory judgment, injunctive

relief, in the form of reinstatement, compensatory and punitive damages.

Plaintiffs and defendants have stipulated to the dismissal of Count II of the complaint, a conspiracy claim under § 1985(3). Defendants have also moved for the dismissal of the remaining counts of the complaint, contending that plaintiff has failed to state a claim upon which relief may be granted as to each count. Alternatively, defendants seek dismissal of the Township Commissioners in their individual capacities and dismissal of the claim for punitive damages.

The gravamen of the complaint is that the action of the Cumru Township Commissioners in accepting Halstead's resignation after they were aware of his withdrawal of his letter of resignation constituted a constructive discharge. Since the defendants did not afford Halstead notice of the reasons for his discharge nor the opportunity for a hearing, Halstead alleges that he was denied constitutional due process of law, and also that defendants' action was a violation of the procedures prescribed by the First Class Township Code with respect to the removal of a police officer.

Defendants contend that there was no discharge or, in the alternative, that Halstead could and should have requested a hearing before the Township Civil Service Commission.

The standards to be applied in considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are well-known: the Court is to take as true the well-pleaded allegations of the complaint and may dismiss only if it is clear that plaintiff can prove no set of facts which would entitle him to relief. *Scheuer v. Rhoades*, 416 U.S. 232, 94 S.Ct. 1683, 40

L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In applying those standards to the facts of this case, we consider first whether Halstead has stated a § 1983 claim for denial of due process.

■ In considering a due process claim, we must initially determine whether there exists a constitutionally protected interest, thereby triggering the protections of the Due Process Clause. *Stana v. School District of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985). It is clear that Halstead had a property right in his position before he submitted the resignation letter of September 10, 1985. The Court of Appeals for the Third Circuit has held that there is an enforceable expectation of continued employment, hence, a property right or protected interest where a termination of employment is restricted by law, government policy or "mutually explicit understandings between a government employer and employee". *Id.* at 126; *Abraham v. Pekarski*, 728 F.2d 167 (3d Cir.1984).

■ Here, both a Pennsylvania statute, 53 Pa.Stat.Ann. § 55644 (Purdon's 1986),[1] and local regulations, the Cumru Township Civil Service Commission Rules and Regulations (Exhibit A to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, Doc. # 8), provide for the removal of police officers only for certain enumerated reasons. Moreover, both provisions also specify that a specific statement of the charges warranting the suspension, removal or reduction in rank of a police officer be provided to the affected officer when such an action is taken by the appointing authority.[2]

---

**1.** Plaintiffs cite 53 Pa.Stat. § 53251, *et seq.*, as the controlling law. Defendants have pointed out that the correct provision is 53 Pa.Stat. § 55625, *et seq.* The provisions cited by the plaintiffs were repealed as to First Class Townships on May 27, 1949 and re-enacted on the same date as part of the First Class Township Code, 53 Pa.Stat. § 55101, *et seq.*

**2.** Both the statute and the Cumru Township Civil Service Rules and Regulations are vague as to whether the notice and hearing must occur

before final disciplinary action is taken by the appointing authority or may occur afterwards. Whether *post hoc* procedures of that nature are sufficient under the Due Process clause is questionable after the United States Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). That is an issue we are not presently required to decide, however, since plaintiff avers that he has never received notice of any charges which may support his removal from office under the applicable law.

Thus, a police officer, including the Chief of Police,[3] can legitimately expect to remain employed until formal charges are lodged and acted upon by the appointing authority or until the officer resigns.

■ We next consider the effect of the September 17, 1985, letter withdrawing Halstead's September 10, 1985, resignation letter. It is clear that if, under the applicable law of Pennsylvania, Halstead's resignation could be considered final before he submitted the letter withdrawing it or if the law otherwise permits the Commissioners to disregard the second letter, there was no termination of employment and consequently no denial of due process. *Ryan v. Mansfield State College,* 677 F.2d 344 (3d Cir.1982). Obviously, if Halstead was not removed from office he was not deprived of his property interest in his position. Likewise, to the extent that his claim for invasion of his Fourteenth Amendment liberty interest in his good name is dependent upon his removal from office, that claim would also fail, resulting in the complete dismissal of Count I of the complaint.[4]

The law is far from clear on the issue of whether Halstead's second letter could effectively withdraw his resignation. Both parties to this litigation seem to be proceeding on the assumption that the Township Commissioners, at some point, had to accept the resignation before it was final. They disagree only on the issues of when the resignation could be and was accepted. Plaintiff contends that the Commissioners could accept Halstead's resignation only at the public meeting on the evening of September 17, 1985, and that under the general law of contracts, he was free to withdraw his offer of resignation prior thereto. Defendants contend that the Commission-

ers could accept the resignation at an executive or work session and did so. Alternatively, defendants argue that the Township's granting of Halstead's request for his accrued vacation time and pension benefits constituted consideration for the offer to resign, thereby rendering it irrevocable.

Neither side, apparently, has considered the questions raised by the Third Circuit Court of Appeals in *Ryan v. Mansfield State College, supra.,* with respect to whether Halstead's resignation had to be accepted at all.

In *Ryan,* the court noted that the resignation of a public *official* must be accepted by the appointing authority before it is effective. It questioned, however, whether the same is true of a public *employee.* That question, in turn, raises the additional issue of whether Halstead, as Chief of Police, should be considered a "public official" or a "public employee".

On the other hand, the Court of Appeals in *Ryan* also indicated that there may be a distinction in Pennsylvania law between the resignation of a public employee that is to be effective immediately and one which will take effect only in the future.

The foregoing issues were not briefed by the parties, although the defendants cited one Pennsylvania Supreme Court case which appears to designate a Chief of Police as a public employee rather than a public official. *Vega v. Burgettstown Borough,* 394 Pa. 406, 147 A.2d 620 (1958). In the absence of full consideration of the issues by the parties, we are not inclined to hold that *Vega* is dispositive, however, since it applies to only one aspect of the issues we have raised and because these legal issues are, or may be, partially dependent upon facts not yet of record in this case.

---

**3.** Although there are special procedures under both the Pennsylvania First Class Township Code and the Cumru Civil Service Rules and Regulations for the appointment of a chief, once appointed the chief is thereafter subject to all of the provisions of the First Class Township Code relating to Civil Service for Police. 53 Pa.Stat. § 55638 (Purdon's 1957), (Exhibit A to Doc. # 8, ¶ 807).

**4.** Plaintiff has neither pleaded nor argued an invasion of his liberty interest except in connection with the alleged removal from office. Thus, if the Court ultimately determines that there was no removal, the Fourteenth Amendment liberty interest claim would also fail.

For example, it may be that the express policy or longstanding custom of Cumru Township requires that the resignation of its Chief of Police is not effective unless and until it is accepted by the Township Commissioners at a public meeting or a private session, whatever the general law of Pennsylvania may be with respect to this issue. Even if it is true, as defendants contend, that the resignation could be and was accepted before the withdrawal letter was submitted, the resolution of that issue depends upon facts not of record, much less contained in the complaint. The unsupported and, on a motion to dismiss, unsupportable factual assertions of defendants' counsel in a brief are not a sufficient basis upon which to dismiss Count I of the complaint.

In the present posture of the case, the Court cannot say with assurance that plaintiff can prove no set of facts which would entitle him to relief. Defendants have, so far, failed to convince the Court that the law of Pennsylvania absolutely forecloses Halstead's claim that he was removed from his position without due process of law.

Likewise, we find no merit in defendants' contention that the complaint should be dismissed, even if we conclude that plaintiff was removed from office, because Halstead failed to pursue due process rights available to him. Both the state statute and local civil service regulations provide that an officer who is removed, suspended or reduced in rank may request a hearing. Both sources of local law also provide, however, that a specific statement of the charges warranting such disciplinary action be presented to the affected officer. Even if we characterize the permissive language of the state law and local regulations as constituting an obligation to seek a hearing, as the defendants argue, Halstead alleges that no charges were ever prepared or submitted to him. Thus, while he may have had an opportunity for a hearing, the notice component of due process was deficient in that Halstead did not receive the kind of notice prescribed by law.

■ Next, we turn to defendants' arguments in support of the dismissal of the pendent state claims. Since we have concluded that the federal claim will not be dismissed, defendants' initial argument, that pendent claims should be dismissed by a federal court where no visible federal claim exists, is not applicable, at least at this juncture.

Defendants contend that Halstead has failed to state a claim for wrongful discharge in that he has failed to allege that he was an at-will employee. Obviously, Halstead cannot so allege because he could be discharged only for cause under the laws of Pennsylvania. The great debate over the parameters of wrongful discharge under state law has been centered around employees-at-will and has sought to identify situations in which there may be constraints upon an employer's traditional right to dismiss an employee. While the Pennsylvania Supreme Court seems to agree with federal district courts, interpreting Pennsylvania law, which have held that the tort of wrongful discharge may be maintained only in the absence of a contractual or statutory remedy and only when the employment is at-will, *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986), citing *Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438 (E.D.Pa.1983) and *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052 (E.D.Pa.1977), the precise situation now before the Court has not previously been considered.

The cited cases appear to presume that a remedy other than a cause of action for wrongful discharge is available to one who is not an at-will employee. In the case of an express contract, *e.g.*, an employee has a cause of action for breach of contract. An additional tort remedy under the rubric "wrongful discharge" is unnecessary. Here, however, while there is an express statutory constraint upon the dismissal of police officers, there does not seem to be a remedy for failure of a municipality to follow the procedures ordained by law. Under the circumstances, we are not convinced and, therefore, decline to hold that Pennsylvania law would not recognize a

cause of action in tort as a remedy for the actions here alleged.

Further, we do not agree with defendants' contention that plaintiff has failed to allege the elements of a claim for wrongful discharge. In ¶¶ 26 and 27 of the complaint, Halstead refers to the statutes and regulations applicable to the dismissal of township police officers and alleges that defendants failed to obey them. Those allegations, along with the allegation in Count III that he was discharged without just cause, sufficiently state a claim for wrongful discharge, to the extent that Pennsylvania law would recognize it in the context of this case. It is clear that Halstead is alleging that, in addition to their failure to follow proper procedures, defendants did not and could not have established that the substantive statutory standards for removal from office were met and, thus, that defendants violated state law in terminating his employment.

To the extent that Count IV, Breach of Contract, is based upon the same facts that support Count III, we would agree with defendants that since Pennsylvania does not recognize a cause of action in both tort and contract for the termination of employment, Count III should be dismissed. *Darlington, supra.* We will not do so, nor will we require plaintiff to amend the complaint at this point. It will be necessary, however, before trial, for plaintiff to clarify whether he is alleging that the statute and regulations he cited in the complaint confer cause of action for breach of contract, whether he is alleging a contract other than the statutory provisions which contain a just cause requirement and/or whether he means to assert a claim only for breach of the term of his alleged contract giving him complete control over the police department. This matter can easily be resolved after discovery when the facts and issues to be tried are better focused. Consequently, though we will not dismiss Count III at the present time, we may reconsider as the case progresses.

We also agree with the defendants that the complaint is unclear as to which defendants, and in what capacity, are alleged to have interfered with Halstead's employment contract with Cumru Township. While it is true that the Township and the governing body thereof, *i.e.*, the Commissioners in their official capacities, generally cannot be said to interfere with their own contracts, that is not dispositive of the question of whether the Commissioners, in their individual capacities, or any of them, could or did interfere with any contracts which allegedly existed between Halstead and Cumru Township. Moreover, even as to the actions of the Commissioners in their official capacities, there may be a cause of action for interference with contract under the proper circumstances. *See, Avins v. Moll,* 610 F.Supp. 308 (E.D.Pa.1984). Once again, we will allow the claim to proceed through discovery, but will also consider dismissal later unless the plaintiff can, by amendment, further clarify his claims as to Count V.

Since none of the other claims will be dismissed at present, Harriet Halstead's claim for loss of consortium may also proceed.

■ Finally, we assume that the demand for punitive damages is limited to those defendants who may be subject thereto. *See, Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Certainly, if the case goes to trial, the jury will be properly instructed as to which defendants and under what circumstances punitive damages may be awarded. The allegation of willfulness is sufficient to state a claim for punitive damages in the complaint. *Id.* Whether they are subsequently recoverable, or even the proper subject of the jury's consideration, will be determined by the evidence at trial.

In summary, it is evident that the federal claims and, to some extent, the state claims are dependent upon issues relating to Halstead's resignation, his withdrawal of it and the Commissioners' decision to accept the former and reject the latter. These issues may be resolvable solely by reference to the law of Pennsylvania or may present mixed questions of law and fact.

Whatever the case, the issues have not been sufficiently briefed by the parties to permit resolution of them at this stage of the litigation.

The course which will best serve the parties and the Court is to deny the motion to dismiss at present and allow discovery to proceed after defendants answer the complaint. The parties may then direct their energies toward assisting the Court in determining the law of Pennsylvania with respect to the resignation issue. After discovery is completed, we will also consider anew the issues relating to Counts III, IV and V, noted above, insofar as necessary. Plaintiffs may amend the complaint after discovery or after further consideration of the law relating to any of the claims stated without further order of the Court. Likewise, defendants will be permitted to amend their answer within twenty (20) days of the filing of an amended complaint.